1  JEFFREY D. WOHL (Cal. State Bar No. 096838)
   PAUL HASTINGS LLP
2  101 California Street, 48th Floor
   San Francisco, California 94111
3  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100
4  jeffwohl@paulhastings.com

5  LINDSEY C. JACKSON (Cal. State Bar No. 313396)
   PAUL HASTINGS LLP
6  515 S. Flower Street, 25th Floor
   Los Angeles, California 90071-2228
7  Telephone: (213) 683-6000
   Facsimile: (213) 627-0705
8  lindseyjackson@paulhastings.com

9  Attorneys for Defendants
   Applied Materials, Inc., and Keith Dupen

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN JACKSON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>APPLIED MATERIALS, INC. and KEITH DUPEN,<br><br>　　　　Defendants. | No. 20-cv-06007-VKD<br><br>**DECLARATION OF CARMEN VARDEN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION**<br><br>Date:　　　April 6, 2021<br>Time:　　　10:00 a.m.<br>Courtroom:　2<br>Judge:　　　Hon. Virginia K. Demarchi<br><br>Trial date:　None set<br>FAC filed:　September 12, 2020 |

I, Carmen Varden, declare:

1. I am a Human Resources Specialist for defendant Applied Materials, Inc. ("Applied"). I make this declaration in support of defendants' Motion to Compel Arbitration and Stay All Proceedings. Except where stated on information and belief, I have personal knowledge of the facts contained in this declaration and could and would testify competently to them under oath if called as a witness.

2. Applied maintains personnel and other records regarding its employees in the regular course of its business, including personnel files for each of its current and former employees. The records are prepared by Applied employees as part of their job functions and relied upon in the normal course of Applied's business.

3. I have reviewed plaintiff Kevin Jackson's application for employment with Applied and his offer letter, which is among the personnel records Applied maintains for Mr. Jackson. Those documents show that Mr. Jackson is an educated individual with an engineering background, a person fully capable of evaluating his job options and their terms and conditions. Attached to this declaration as Exhibit A is a true and correct copy of Mr. Jackson's application for employment with Applied, and attached to this declaration as Exhibit B is a true and correct copy of Mr. Jackson's offer letter. (Personal information has been redacted from both documents.)

4. Attached to this declaration as Exhibit C is Mr. Jackson's Employment Agreement with Applied, which also is among the personnel records Applied maintains for Mr. Jackson. Under Applied's standard process, Mr. Jackson would have been presented with his Employment Agreement at the same time that he received his offer letter and provided time to ask questions about it. Mr. Jackson then could have accepted the Employment Agreement by affixing his electronic signature using an electronic document-signing feature, DocuSign. Applied's personnel records for Mr. Jackson show that Mr. Jackson executed his Employment Agreement in that manner on June 1, 2018.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed on February 24, 2021 at San Jose, California.

_____
Carmen Varden

# EXHIBIT A


**APPLIED MATERIALS**

Staffing Department
P.O. Box 58039
Santa Clara, California
95052-8039

## APPLICATION FOR EMPLOYMENT

Personal resume must be attached to completed application in order to be considered for employment. Information provided will be verified.

### PERSONAL INFORMATION

| LAST NAME | FIRST NAME AND MIDDLE INITIAL(S) | DRIVER'S LICENSE NUMBER | TODAY'S DATE |
|---|---|---|---|
| Jackson | Kevin | [redacted] | 5-10-18 |

| OTHER NAMES UNDER WHICH YOU HAVE BEEN EMPLOYED OR ATTENDED SCHOOL | SOCIAL SECURITY NUMBER |
|---|---|
|  | [redacted] |

| PRESENT ADDRESS | CITY AND STATE | ZIP CODE | IF UNDER EIGHTEEN, CAN YOU, AFTER EMPLOYMENT, SUBMIT A WORK PERMIT? |
|---|---|---|---|
| [redacted] | Salem, OR | 97304 | ☐ YES ☐ NO |

| HOME PHONE | ALTERNATE PHONE | EMAIL ADDRESS |
|---|---|---|
| [redacted] |  | [redacted] |

ARE YOU LEGALLY AUTHORIZED TO WORK IN THE UNITED STATES? ■ YES ☐ NO

WILL YOU, NOW OR IN THE FUTURE, REQUIRE SPONSORSHIP FOR EMPLOYMENT STATUS (E.G. H-1B VISA STATUS)? ☐ YES ■ NO

HAVE YOU LEFT THE EMPLOYMENT OF THE DEPARTMENT OF DEFENSE (DOD) WITHIN TWO YEARS OF THE DATE OF THIS APPLICATION? ☐ YES ■ NO

HOW WERE YOU REFERRED TO APPLIED MATERIALS?
☐ AD  ☐ AGENCY  ☐ JOB FAIR  ☐ SCHOOL  ☐ APPLIED EMPLOYEE (NAME)  ■ OTHER: Career Site Online

### WORK REQUIREMENTS

| POSITION OR AREA OF INTEREST | ALTERNATE POSITION OR AREA OF INTEREST |
|---|---|
| Total Product Support Engineer IV | Product Line Management IV |

| DATE AVAILABLE | SALARY DESIRED | GEOGRAPHIC PREFERENCE |
|---|---|---|
| June 4, 2018 | 130000 | Santa Clara, CA |

TYPE OF EMPLOYMENT DESIRED: ■ FULL TIME  ☐ PART TIME  ☐ INTERNSHIP  ☐ SWING SHIFT

IF REQUIRED, WOULD YOU BE WILLING TO WORK: ☐ SHIFT WORK  ■ HOLIDAYS  ■ OVERTIME  ■ WEEKENDS

### EDUCATION

| SCHOOL, INSTITUTION | NAME AND LOCATION | DEGREE/MAJOR | GPA | UNITS COMPLETED & GRADUATION DATE |
|---|---|---|---|---|
| HIGH SCHOOL | San Carlos High School, San Carlos, CA | Diploma | 2.8 | Not Required |
| TECHNICAL SCHOOL, TRADE/ BUSINESS COLLEGE | Oregon Institute of Technology, Klamath Falls | Engineering Technology | 2.75 |  |
| UNIVERSITY or COLLEGE | University of Phoenix | of Business Administration | 3.25 |  |
|  |  |  |  |  |

THESIS OR DISSERTATION AND ADVISOR

### OTHER APPLICABLE TRAINING

TECHNICAL

CLERICAL

PERSONAL COMPUTER SKILLS

**OPTIONAL:** COMPLETE THE FOLLOWING OPTIONAL SECTION ONLY IF A LANGUAGE OTHER THAN ENGLISH IS RELEVANT TO THE POSITION YOU ARE APPLYING FOR.

| FOREIGN LANGUAGE ABILITIES | READ | WRITE | SPEAK |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

10/01/17

## EMPLOYMENT HISTORY

Please begin with present or most recent employer, and account for all periods of employment including part-time, summer, voluntary, and military experience for a seven year period. Massachusetts residents may add verified volunteer work.

**NAME OF PRESENT OR MOST RECENT EMPLOYER:** Lam Research Corp
**ADDRESS:** 11155 Leveton Dr Tualatin, OR 97062
**POSITION / TITLE:** Program Manager III
**SUPERVISOR:** Walter Westmoreland
**PHONE NO.:**
**MAY WE CONTACT?** ☐ YES ☒ NO
**DATE STARTED (Mo/Yr):** Mar 10 2017
**DATE LEFT (Mo/Yr):** Mar 3 2018
**REASON FOR LEAVING:** Quality Assurance Manager for Sabre/Sabre 3D/Sabre 3DxT product
**DUTIES AND RESPONSIBILITIES:** ☒ See Resume
Quality Assurance Manager for Sabre/Sabre 3D/Sabre 3DxT product line

**FORMER EMPLOYER:** Lam Research Corp
**ADDRESS:** 11155 Leveton Dr Tualatin 97062
**POSITION / TITLE:** Global Product Support Engineer
**SUPERVISOR:** Darrin Van Nevele
**PHONE NO.:**
**MAY WE CONTACT?** ☒ YES ☐ NO
**DATE STARTED (Mo/Yr):** June 13 2013
**DATE LEFT (Mo/Yr):** March 9 2017
**REASON FOR LEAVING:** GPS support Asian Pacific Region. Primary region : China
**DUTIES AND RESPONSIBILITIES:** ☒ See Resume
GPS support Asian Pacific Region. Primary region : China

**FORMER EMPLOYER:** Retronix International Semicond
**ADDRESS:** 254 S. Mulberry # 110 Mesa, AZ 85202
**POSITION / TITLE:** Field Service Engineer
**SUPERVISOR:**
**PHONE NO.:**
**MAY WE CONTACT?** ☒ YES ☐ NO
**DATE STARTED (Mo/Yr):** Mar 2 2012
**DATE LEFT (Mo/Yr):** May 25 2013
**REASON FOR LEAVING:** FSE International AMAT Platforms
**DUTIES AND RESPONSIBILITIES:** ☒ See Resume
FSE International AMAT Platforms

**FORMER EMPLOYER:** Qualcomm MEMS Technology
**ADDRESS:** 2581 Junction Ave San Jose CA 95134
**POSITION / TITLE:** Thin Films R&D Support Engineer
**SUPERVISOR:** Todd Zion
**PHONE NO.:**
**MAY WE CONTACT?** ☒ YES ☐ NO
**DATE STARTED (Mo/Yr):** November 1 20
**DATE LEFT (Mo/Yr):** November 30
**REASON FOR LEAVING:**
**DUTIES AND RESPONSIBILITIES:** ☒ See Resume

**FORMER EMPLOYER:** Hynix Semiconductor Manufact
**ADDRESS:** 1830 Willow Creek Circle Eugene, OR
**POSITION / TITLE:** Thin Films Supervising Engineer
**SUPERVISOR:** Ron Williams
**PHONE NO.:**
**MAY WE CONTACT?** ☒ YES ☐ NO
**DATE STARTED (Mo/Yr):** November 27,
**DATE LEFT (Mo/Yr):** May 15, 2007
**REASON FOR LEAVING:**
**DUTIES AND RESPONSIBILITIES:** ☒ See Resume

10/01/17

**EXHIBIT B**

DocuSign Envelope ID: A05DE204-0D4C-46A4-9A4E-C11B202251BE

162991

June 1, 2018



3050 Bowers Avenue | P.O. Box 58039
Santa Clara, California 95054, U.S.A.
Telephone: 408 727 5555
www.appliedmaterials.com

June 1, 2018            REVISED

Kevin Jackson
████████

Dear Kevin:

I am pleased to extend an offer of employment to you for the position of Product Line Management IV, reporting to Michael Biese. We believe you will find great opportunity and professional challenge at Applied Materials, Inc. ("Applied" or "Applied Materials") where you will contribute to the success of a world-class organization.

Your starting salary will be ████ per week, which is equivalent to ████ per bi-weekly pay period and would amount to ████ on an annualized basis.

You will also participate in the Applied Incentive Plan ("AIP") effective on your first date of employment. The target payout percentage in fiscal year 2018 will be 20% of your base salary, pro-rated from your start date. Payouts under the AIP are not guaranteed, and are based on Company, business unit, and individual performance. If your start date occurs after July 29, 2018 you will not be eligible to receive an AIP payout for fiscal year 2018.

A recommendation will be made that you be granted a stock award for the number of shares of Applied Materials Common Stock equivalent to USD ████ on the date of grant. This stock award will be scheduled to vest over a four-year period, subject to your continued employment on each relevant vesting date. The shares underlying the stock award will be issued to you as they vest. The number of shares delivered to you will be reduced as necessary to satisfy applicable tax withholding. If approved, the stock award will be granted under the terms and conditions of Applied Materials' stock plans and applicable stock agreement. A stock award grant to you does not constitute a contract of employment and does not obligate the company to retain you in its employ for any period.

Applied Materials will provide you with relocation assistance provided you agree to the terms set out in your relocation package documentation (outlined in a separate letter).

As part of the employment process, it is necessary for us to ask you to complete a number of forms. This offer of employment is contingent upon your ability to provide and maintain the following:

1) Successful completion of a pre-employment background screen.

2) Proof of your identity and authorization to work in the United States;

3) A signed copy of the U.S. Export Compliance Agreement. If you are not a United States citizen, United States permanent resident, or Canadian citizen, you may not be able to begin work at Applied Materials until such time as Applied Materials, in its sole discretion, has obtained a validated license authorizing your receipt of regulated company information;



June 1, 2018

3050 Bowers Avenue | P.O. Box 58039
Santa Clara, California 95054, U.S.A.
Telephone: 408 727 5555
www.appliedmaterials.com

4) A signed copy of the Employment Agreement and the offer letter to Applied Materials prior to the start date set forth in the offer letter; and

5) Disclosure of your participation on any boards of directors or in any outside business activities so that Applied may evaluate whether such participation poses an actual or potential conflict of interest with any aspect of Applied's business.

6) This offer is made with the understanding that you will continue to comply with all prior employment agreements, and that you will not bring with you, use or disclose confidential or proprietary information belonging to any of your previous employers while employed by Applied Materials. You also agree to disclose to Applied Materials all ongoing contractual obligations to previous employers so that Applied may evaluate whether they will affect your ability to execute an Employment Agreement with Applied Materials.

During your employment at Applied Materials, you may be required to participate in the Medical Monitoring Program. The MMP is part of the Applied Materials' employee health awareness program, and includes employees working in areas where toxic and/or hazardous substances are present. By having employees engage in periodic medical exams, this program takes a proactive approach to detection of potential health problems. If the company determines you are required to participate, you will be notified in advance to allow for adjustment of your schedule.

If you agree to accept the terms of this offer letter and the attached Employment Agreement (which contains provisions pertaining to your employment, including protection of intellectual property, at-will employment status and arbitration), please sign both documents in DocuSign. In addition, please sign the document entitled "U.S. Export Compliance Agreement" in DocuSign. **This offer will expire on June 8, 2018.**

You should report to Building 1 at 8:30 a.m. on your first day of employment. **Please bring your completed forms and necessary documentation.** Building 1 is located at 3050 Bowers Ave., Santa Clara, CA 95054.

You will receive additional information regarding New-Hire Orientation and training upon receipt of your signed offer letter.

Sincerely,

*Bruce Hatz*

Bruce Hatz
Managing Director, Global Staffing

I accept the employment offer as stated above.

Signature _____*kevin Jackson*_____   Date _____June 1, 2018_____

DocuSign Envelope ID: A05DE204-0D4C-46A4-9A4E-C11B202251BE

162991

June 1, 2018

3050 Bowers Avenue | P.O. Box 58039
Santa Clara, California 95054, U.S.A.
Telephone: 408 727 5555
www.appliedmaterials.com

**APPLIED MATERIALS**®

Start Date _____ June 11, 2018 _____

*(Must be a Monday)*

**Please sign the letter in DocuSign (together with the Employment Agreement and U.S. Export Compliance Agreement) by the Tuesday prior to your start date to:**

**Ginny Conboy**
**APPLIED MATERIALS, INC.**
**3225 Oakmead Village Drive   M/S 1217**
**P.O. Box 58039**
**Santa Clara, CA 95054**
**Email:** Applied_Materials_HR_Staffing@amat.com
**Phone: 408.235.6200   Fax: 800.639.1986**

# EXHIBIT C

DocuSign Envelope ID: A05DE204-0D4C-46A4-9A4E-C11B202251BE

162991

Revised July 28, 2016

June 1, 2018

## EMPLOYMENT AGREEMENT

NAME: Kevin Jackson                         DATE: June 1, 2018

DEPARTMENT: _____

This Employment Agreement ("Agreement") is effective as of the date specified above ("Effective Date") by and between the above-named employee (referred to in the first person as "I," "me," or "my") and Applied Materials, Inc. ("Applied").

In consideration of my Employment and the compensation paid to me for my services during the term of my Employment with Applied or any of its Affiliates, I agree with Applied as follows:

1. **DEFINITIONS**

As used in this Agreement:

    A.    "Affiliate(s)" means any corporation, company, limited liability company or other entity that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with Applied, including any predecessors and successors in interest.

    B.    "Confidential Information" means information, whether tangible or intangible, of a confidential or secret nature that is (i) a legally protectable trade secret, or (ii) proprietary information that does not rise to the level of a legally protectable trade secret, but that the parties agree by signing this Agreement is the confidential property of Applied. Such information includes, but is not limited to, information that I may develop alone or in collaboration with and/or that may be disclosed or otherwise made available to me by Applied, or by a third party, that relates to the business of Applied or to the business of a customer, supplier, or any other party with whom Applied agrees to hold information of such party in confidence. By way of illustration, without limitation, "Confidential Information" includes trade secrets as well as proprietary data, such as: (a) <u>technical information</u>, including technology and product roadmaps, manufacturing techniques, concepts, processes, formulas, designs, source code and other programs, drawings, manuals, innovations, inventions, discoveries, improvements, research and development, works of authorship, test results, specifications, and know-how; (b) <u>commercial information</u>, including marketing and business plans, sales strategies, forecasts, financial information, budgets, projections, production plans, product inventory and launch plans, and price lists; (c) <u>personnel information</u>, including organization charts and job assignments, employee directories, salaries, skills, abilities, performance reviews, and qualifications of other employees; and (d) <u>customer and supplier information</u>, including identities, contact lists, organization charts, product requirements, and purchase histories. Confidential Information also includes such information, illustrated by example above, that is disclosed to or otherwise shared with a government agency or other third party that is subject to a joint venture and/or nondisclosure agreement. Confidential Information does not include information that I can show by competent proof: (i) was generally known to the relevant public at the time of disclosure in the same form as maintained by Applied; (ii) was lawfully received by me from a third party or developed by me independent of my Employment and without breach by me or a third party of any obligations to Applied; or (iii) was known to me prior to my Employment.

    C.    "Creative Works" means any invention, data, design, discovery, concept, drawings, software (in object and source code), documentation, works of authorship and other copyrightable works, information, materials, processes, programs, know-how, improvements, developments, formulae, ideas, and techniques, that may be protectable under domestic or international intellectual property laws, including without limitation any Confidential Information related thereto, and all Intellectual Property Rights in any of the items listed above.

    D.    "Employment" means my employment with Applied or any other Affiliate of Applied.

    E.    "Applied" means, collectively, Applied and its Affiliates.

Initials _kJ_

F.  "Applied Creative Works" means all Creative Works assigned to Applied.

G.  "Applied Conflicted Entity" means an entity that buys from, sells to, or competes with or intends to compete with Applied.

H.  "Applied Property" means all property belonging to Applied, including but not limited to all Confidential Information, documents, data, records, drawings, notebooks, manuals, reports, apparatus, equipment, computer memories and other items and information, including any copies thereof, containing the Confidential Information, that will come into my custody or possession in connection with, or as a result of, my Employment.

I.  "Intellectual Property Rights" means all trade secrets, copyrights, trademarks, mask work rights, patents, and other intellectual property rights recognized by the laws of any jurisdiction or country.

J.  "Prior Creative Works" means all Creative Works that (i) I have, or I have caused to be, alone or jointly with others, conceived, developed, or reduced to practice prior to the commencement of my Employment; and (ii) in which I have an ownership interest or that I have a license to use; and (iii) that I wish to have excluded from the scope of this Agreement.

K.  "Products" means the current or former hardware and software products designed, developed, manufactured, marketed, provided, licensed, leased, or sold by or on behalf of Applied, including, but not limited to products under development and products that are planned to be developed, and also including but not limited to those products on any current or former price lists of Applied, and any and all source and object codes, binaries, supplements, modifications, updates, corrections and enhancements to past and present versions of such products and versions of such products under development, and any and all English and foreign language versions of past and present versions of such products and versions of such products under development.

L.  "Services" means all services related to the Products designed, developed, manufactured, marketed, provided, licensed, leased, or sold by or on behalf of Applied, including, without limitation, design, development, implementation, manufacturing, consulting, engineering, training, marketing, support and maintenance services and processing services relating to or using the Products.

2.  ACKNOWLEDGEMENTS

A.  I acknowledge and agree that Applied is engaged in a continuous program of research, development, design, production, manufacturing, distribution, licensing, sales and marketing regarding its Products, Services and any other aspects of its business, present and future, and that Applied maintains Confidential Information that has been created, developed or discovered by or for Applied, or otherwise becomes known to Applied.

B.  I acknowledge and agree that my Employment creates a relationship of confidence and trust between me and Applied, and that in the course of my Employment, I will have access to certain Confidential Information that constitutes valuable assets of Applied's business, represents a significant investment of time and resources, and that access to such Confidential Information is granted to me only for the purpose of enabling me to perform my duties for Applied.

3.  CONFIDENTIAL INFORMATION AND PROPERTY

A.  **Non-disclosure of Confidential Information.** I acknowledge and agree that all Confidential Information is the proprietary property of Applied and that all right, title and interest in and to such Confidential Information will be and remain with Applied. Except as may be authorized by Applied in writing, as authorized by Applied in connection with the services that I provide to Applied as part of my Employment responsibilities, or as provided under HR Policy 7-07, which I have been provided or may access via on Applied's intranet site, I will hold all Confidential Information in trust and confidence for Applied, and will not disclose Confidential Information to any person or entity outside of Applied, or use Confidential Information for the benefit of any person or entity other than

Applied, either during or after my Employment. The rights and obligations of this Section 3.A will continue after any expiration or termination of this Agreement or of my Employment, so long as the Confidential Information remains confidential. I further agree that all Applied Property will be, are and remain the exclusive property of Applied. I will use the Applied Property only in the performance of my duties to Applied.

    B.    **Return of Information and Materials.** Upon termination of my Employment, or upon request from Applied, whichever occurs first, I will deliver to Applied, and will not retain possession of, any Applied Property, whether or not constituting Confidential Information, provided to me by Applied or by Applied customers, suppliers, contractors, or other parties in relationship with Applied, or produced by me, in connection with my Employment. I will search for and return all such Applied Property in my possession, custody or control, in electronic or physical form (including but not limited to personal email, cloud storage accounts, smartphones, tablets and any other computer media or electronic storage devices) upon the termination of my Employment for any reason, and I will not take with me any such Applied Property or any reproduction upon or after termination of my Employment. Immediately upon a request from Applied for any reason I will deliver promptly to Applied all computer media, smartphones or other electronic storage devices containing Applied Property. I will execute upon termination of my Employment, in a form provided by Applied, an exit certificate attesting truthfully to my compliance with this Section 3.B. Should I identify Applied Property in electronic or physical form following the termination of my Employment in my possession, custody or control, that was not previously returned to Applied, I will immediately notify Applied to arrange for its return and I agree not destroy, delete or otherwise alter this Applied Property.

    C.    **Non-Disclosure and Return of Third-Party Information and Materials.** I understand that Applied has received and in the future will receive Confidential Information from third parties subject to an obligation by Applied to maintain the confidentiality of such information. I acknowledge and agree that I owe Applied a duty, both during and after my Employment, to hold all such Confidential Information in strict confidence, and not to disclose it to others or to use it for the benefit of any person or entity other than for Applied or such third party. I will not retain possession of any such third-party information upon termination of my Employment, and will search for and return to Applied any such third-party information in my possession, custody, or control.

4.    <u>NON-SOLICITATION</u>

    A.    **Non-Solicitation of Employees.** During my Employment and for a period of one (1) year after termination of my Employment for any reason, I will not, either for myself or for any other person or entity, directly or indirectly solicit, induce, recruit or encourage any employee of Applied to leave his or her employment with Applied.

    B.    **Non-Solicitation of Customers or Suppliers.** During my Employment, I will not, either for myself or for any other person or entity, (i) directly or indirectly solicit an Applied customer or supplier or (ii) attempt to gain the business of any customer or supplier of Applied. After termination of my Employment for any reason, I will not with the use of Confidential Information (i) directly or indirectly solicit an Applied customer or supplier or (ii) attempt to gain the business of any customer or supplier of Applied.

    C.    **Obligation to Notify Applied of New Employer.** To enable Applied to evaluate and ensure my compliance with the obligations imposed by this Agreement, I will notify Applied in writing, upon termination of my Employment for any reason, the identity of my new employer, as well as my new position title and responsibilities. Further, I will continue to inform Applied in writing any time I accept or change employment for any reason during the twelve (12) months following termination of my Employment.

5.    <u>ASSIGNMENT OF APPLIED CREATIVE WORKS</u>

    A.    **Prior Creative Works.** I have disclosed on <u>Schedule A</u> attached to this Agreement, which is incorporated by reference, a complete list of all Prior Creative Works that relate to Applied's current or proposed business, products, or research and development. If disclosure of any Prior Creative Work would cause me to violate

any existing confidentiality agreement or cause an unpatented Prior Creative Work to lose its trade secret status, I understand that I am not to list such Prior Creative Work in Schedule A but am only to disclose a name and/or a cursory description for each such Prior Creative Work, a listing of the party or parties to whom it belongs, and an explanation why full disclosure was not given. If no Prior Creative Works are listed in <u>Schedule A</u>, I represent that there are no Prior Creative Works. I agree that I will not incorporate, or permit to be incorporated, Prior Creative Works in any Applied Creative Works without Applied's prior written consent. If, in the course of my Employment, I incorporate a Prior Creative Work into an Applied process, machine or other work or into Applied Products or Services, I grant Applied a non-exclusive, perpetual, fully-paid and royalty-free, irrevocable and worldwide license, with rights to sublicense through multiple levels of sublicensees, to reproduce, make derivative works of, distribute, publicly perform, and publicly display in any form or medium, whether now known or later developed, make, have made, use, sell, import, offer for sale, and exercise any and all present or future rights in, such Prior Creative Work.

    B.    **Disclosure and Assignments of Applied Creative Works.** Except for the Prior Creative Works listed on <u>Schedule A</u> and, if applicable to me, those Creative Works that I can prove qualify fully under the provisions of California Labor Code Section 2870 (a copy of which is attached as <u>Schedule B</u> and is incorporated by reference), I assign and agree to assign in the future (when any such Creative Works or Intellectual Property Rights are first conceived, reduced to practice or first fixed in a tangible medium, as applicable) to Applied all my right, title, and interest in and to any and all Creative Works (and all Intellectual Property Rights with respect thereto) conceived, developed, produced, learned, made or reduced to practice by me, either solely or jointly with others during: (i) the time of my Employment, whether or not during normal working hours; (ii) any prior period in which I performed services for or on behalf of Applied; or (iii) following termination of my Employment, if such Creative Works described in parts (i)-(iii) above: (a) relate to, result from or are suggested by or through any current or reasonably anticipated business activity of Applied; (b) are aided by the use of time, material, Confidential Information, intellectual property, other inventions, or facilities of Applied, whether or not during working hours; or (c) relate to any work I performed for Applied, whether or not during normal working hours. All assigned Applied Creative Works are and will be the exclusive property of Applied.

    C.    I will:

        (i)    without further compensation, promptly and fully disclose in detail in writing to Applied all Creative Works authored, conceived, or reduced to practice by me, either alone or with others, that are described in clauses (i)-(iii) of Section 5.B above, all Confidential Information relating thereto, and all patent applications relating to such Creative Works filed by me or in which I am named as an inventor or co-inventor;

        (ii)    at the request of Applied, during and after my Employment, at Applied's expense, assist Applied in every proper way, including consenting to and joining in any action to obtain and enforce Intellectual Property Rights and moral rights relating to Applied Creative Works in all countries, and will sign and provide any and all documents, testimony or any other assistance that is reasonably necessary to assign, file, register, maintain, enforce, or otherwise secure to Applied exclusive rights to the Applied Creative Works in all countries;

        (iii)    accept the wages provided for my services as my sole compensation for the assignment to Applied of all rights to the Applied Creative Works, and other rights granted to Applied under this Agreement. In the event any Creative Work derived in whole or in part from Applied Confidential Information is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my Employment, it is to be presumed that the Creative Work was conceived or reduced to practice during the period of my Employment and belongs to Applied. Accordingly, if I file any patent application (including provisional and PCT applications) or copyright registration containing or claiming any subject matter that is derived

in whole or in part from Applied Confidential Information, I will promptly assign such application(s) to Applied pursuant to this Agreement;

(iv) and do assign to Applied any and all "moral rights" that I may have in copyrightable Applied Creative Works. "Moral Rights" mean any rights of paternity, integrity, disclosure, withdrawal, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right." To the extent such moral rights cannot be assigned to Applied and to the extent the following is allowed by the laws in any country where moral rights exist, I unconditionally and irrevocably waive the enforcement of such moral rights, and all claims and causes of action of any kind against Applied or related to Applied's customers, with respect to such rights. I further acknowledge and agree that neither my successors-in-interest nor legal heirs retain any moral rights in any copyrightable Applied Creative Works (and any Intellectual Property Rights with respect thereto).

D. **Cooperation.** If Applied is unable for any reason to secure my signature to apply for or to pursue an application for registration or other protection of any Applied Creative Works or Confidential Information assigned to Applied, then I irrevocably designate and appoint Applied and its duly authorized officers and agents as my agent and attorney in fact, to act for and on my behalf to execute and file any such applications, to do all other lawfully permitted acts to further the prosecution and issuance of patent or mask work or copyright registration thereon, and any acts necessary to obtain and enforce the full benefits, enjoyment, rights and title, and to further the purposes of this Agreement, with the same legal force and effect as if executed by me. I waive and quitclaim to Applied any and all claims, of any nature whatsoever, that I now or may hereafter have for infringement of any patents, mask works or copyrights resulting from any such application for patent or mask work or copyright registrations assigned hereunder to Applied.

E. (*Applicable only to employees based in California.*) I understand that the provisions of this Agreement do not apply to any Creative Work that qualifies fully to be excluded pursuant to the provisions of California Labor Code Section 2870 (a copy of which is attached as <u>Schedule B</u> and is incorporated by reference). I will inform Applied promptly in writing of any Creative Works I believe meet such criteria that are not otherwise identified in <u>Schedule A</u>.

F. **Records.** I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that is required by Applied) of all Creative Works made by me during the period of my Employment, which records will be considered Confidential Information and will be available to, and remain the sole property of, Applied at all times.

6. CONFLICT OF INTEREST

A. **Duty of Loyalty.** During my Employment, (i) I will make or participate in business decisions based on the best interests of Applied and not based on my personal relationships or personal benefit, (ii) I will not directly or indirectly engage in activities in which my responsibilities or loyalties to Applied may be compromised, (iii) I will not engage in any outside business activities, consulting services, or outside employment that compete with, or may have the appearance of competing with, the current or prospective interests of Applied, including but not limited to: (a) being employed by an Applied Conflicted Entity; (b) investing in an Applied Conflicted Entity (except for publicly owned companies, in which I may own up to $25,000 in market value of shares, or 2% of outstanding shares, whichever is greater, unless Applied's Board of Directors approves a larger amount); (c) providing time, materials or other services to an Applied Conflicted Entity; (d) forming an Applied Conflicted Entity; or (e) engaging in activities not authorized by Applied that involve Applied's equipment, supplies, facilities, or Confidential Information.

B. **Existing Relationships.** Applied requires all employees to disclose any relationships or personal interests that conflict or may appear to conflict with Applied's interests. List below your (i) outside business activities,

5   Initials kJ

consulting services or outside employment, and (ii) any familial or close personal relationships with (a) employees of Applied's customers or suppliers, or (b) any public officials including government employees, political candidates or employees of state owned enterprises:

_____
_____
_____

During my Employment, I will promptly disclose to Applied in detail any change in my outside commercial or employment activities. I represent that I have not entered into, and will not enter into, any agreement either written or oral that conflicts with my Employment.

    C.    **No Violation of Agreements with Former Employers or Other Entities.** In performing my job duties and complying with the terms of this Agreement, I will not breach any invention assignment, non-disclosure, non-competition, non-solicitation or similar agreement with any former employer or other entity. I represent that my execution of this Agreement, my Employment, and my performance of my proposed duties to Applied, does not and will not violate any agreement or obligations I may have to my former employers or other entities, and I represent that I am not bound by any agreement that would impede my Employment. I further represent that I have and will continue to comply with all obligations to my former employers or other entities, and I will not use or disclose any confidential information belonging to any former employer or other entity during my Employment. I agree to immediately notify Applied if circumstances should arise that would cause me to use any confidential information of any former employer or other entity in the performance of my job duties during my Employment. In addition, I represent that I am not in possession of any materials from any former employer or other entity that could reasonably be considered trade secrets or proprietary information of such former employer or other entity. In the event any former employer or other entity makes any claim that I have failed to comply with a non-compete, non-disclosure or other agreement by virtue of my Employment, I will notify Applied immediately upon learning of such claim and will provide all such information about the claim that I may have. If I have executed a non-compete agreement with a former employer or other entity, I have provided a copy of that agreement to Applied's Human Resources Department, or will do so immediately.

7.    AT-WILL EMPLOYMENT STATUS

I understand and acknowledge that my Employment is "at will," which means that there is no agreement, express or implied, between me and Applied or any other Affiliate of Applied for any definite period of employment. Applied and I each have a right to terminate my Employment at any time, for any reason (other than for a reason expressly prohibited by applicable law) or no reason, with or without cause and with or without advance notice.

8.    ARBITRATION

    A.    In consideration of my Employment, to the fullest extent allowed by law and except as set forth below, any controversy or claim (whether or not arising out of or relating to my Employment or termination of my Employment), whether asserted by Applied and/or any other Affiliate of Applied against me or by me (and no other party) against Applied and/or any other Affiliate of Applied or any of their respective agents or employees (whether acting in that capacity or otherwise), parent companies, benefit plans, or the successors and assigns of any of them, will be finally resolved by binding arbitration. The arbitration will be conducted by a single, neutral arbitrator and administered by JAMS, Inc. ("JAMS"), under its Employment Arbitration Rules & Procedures (available at http://www.jamsadr.com), and no other rules, if JAMS has an office within 100 miles of where I am employed or most recently was employed with Applied; or, if JAMS does not have an office within that 100-mile area, by the American Arbitration Association ("AAA") under its Employment Arbitration Rules and Mediation Procedures (available at http://www.adr.org), and no other rules. Notwithstanding the preceding sentence, if one or more of the claims to be arbitrated involves Applied's Confidential Information, the JAMS Comprehensive Arbitration Rules & Procedures and the JAMS Optional Appeal Procedure will be used by the arbitration tribunal instead of the JAMS Employment

Arbitration Rules & Procedures or the AAA Employment Arbitration Rules and Mediation Procedures. Upon my request, Applied will provide me with printed copies of the JAMS and AAA rules. Claims subject to arbitration will include, but are not limited to, any claims under (as amended) Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, the Employee Retirement Income Security Act of 1974, and any other federal, state or local statute, regulation or common law doctrine, including contract or tort.

   B. Notwithstanding Section 11.A. below, this agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). If for any reason the FAA is held not to apply to this Agreement, then the law of arbitrability of the state in which I work or last worked for Applied will apply. The arbitrator may construe or interpret, but may not vary or ignore, the terms of this arbitration provision, and will be bound by applicable law. Prior to invoking arbitration, I understand that I am encouraged, but not required, to exhaust all remedies as set forth in the Human Resources Open Door Policy (currently HR Policy 6-01). Except as provided below, both Applied and I are waiving our rights to proceed in a court of law, including a trial by jury, in exchange for arbitration.

   C. The arbitration will be conducted in the city with a JAMS or AAA office (as applicable) nearest to where I am employed or most recently was employed with Applied, and no dispute affecting my rights or responsibilities will be adjudicated in any other venue or forum. Judgment upon any award rendered in an arbitration proceeding may be entered in any court having competent jurisdiction of the matter. Any controversy or claim subject to arbitration by either me or Applied will be deemed waived, and will be forever barred, if arbitration is not initiated within the time limit established by the applicable statute of limitations. Applied and I will have the same remedies in arbitration as we would otherwise have had if the claim had been filed in a court of law, including, where authorized by law, compensatory and punitive damages, declaratory relief, injunctive relief, and attorneys' fees. Applied will pay all costs of JAMS or AAA to administer the arbitration and the costs for the arbitrator; provided, however, that if I am the party initiating the arbitration, I will be required to contribute (unless excused on grounds of *in forma pauperis*, for good cause shown) an amount equal to the filing fee in the court of general jurisdiction in the county or comparable governmental unit where I work or last worked for Applied.

   D. In any arbitration commenced pursuant to this agreement to arbitrate, depositions may be taken and discovery obtained to the reasonable amount necessary for both parties to be able to present their claims and defenses, taking into account the parties' mutual desire to have a speedy, cost-effective dispute-resolution mechanism. The arbitrator will determine and apply reasonable discovery limits in the arbitrator's discretion. Any award by the arbitrator(s) will be reasoned and accompanied by a statement of the factual and legal bases for the award.

   E. This agreement to arbitrate will not apply to claims for workers' compensation or unemployment compensation or to claims covered by (and defined in) the Franken Amendment, first enacted in Section 8116 of the Defense Appropriations Act of 2010, or any similar statute, regulation or executive order, including but not limited to Executive Order 13673, to the extent that any such statute, regulation or executive order is effective and applicable to this agreement; or other claims that as a matter of law may not be compelled to arbitration. Nothing in this agreement to arbitrate will prevent any party from seeking from a court temporary equitable relief in aid of arbitration, including temporary restraining orders, temporary protective orders, evidence-preservation and return orders, and preliminary injunctions, where such relief is otherwise available by law. Nothing in this agreement to arbitrate prevents the filing of, or pursuit of relief through, a charge or complaint or other communication with any responsible governmental official, office, or agency (including but not limited to the National Labor Relations Board). Applied may in the future modify this agreement to arbitrate to adapt to changes in the law applicable to the agreement or as other future circumstances warrant in Applied's judgment, upon reasonable prior notice of the modification.

Initials kJ

9. **NO EXPECTATION OF PRIVACY IN APPLIED RESOURCES**

I understand and acknowledge that I have no right or expectation of personal privacy with respect to Applied's electronic resources and information technology assets, which include but are not limited to all networking, computing, telephonic and other electronic systems to which I may be given access in connection with my Employment. Nor do I have any right or expectation of personal privacy in any workspace within Applied's facilities. This means that Applied can access, monitor or search any such electronic resources, information technology assets or workspace at any time for any reason or no reason, with or without notice.

10. **COMPLIANCE WITH CODE OF CONDUCT AND APPLIED POLICIES**

I understand that I am responsible for understanding and complying with all Applied policies and procedures applicable to me (including, but not limited to, any standards of business conduct, code of ethics and policies applicable to my Employment), as they may be revised from time to time.

11. **GENERAL PROVISIONS**

 A. **Governing Law.** Except for the arbitration agreement (Section 8), which has its own provision with respect to governing law, this Agreement will be governed and construed by the law of the state in which I work or last worked for Applied at the time that any issue, controversy or claim arises under this Agreement.

 B. **Remedies and Recovery of Fees.** I recognize that any breach by me of Sections 3 and 4 of this Agreement will cause Applied immediate and irreparable harm that cannot be compensated adequately by an award of monetary damages alone. If a legal proceeding is commenced with respect to a dispute over the disclosure or use of Applied's Confidential Information, the prevailing party will be entitled to an award of reasonable attorneys' fees incurred in the proceeding.

 C. **Validity of Entire Agreement.** If one or more of the provisions in this Agreement is deemed invalid, illegal, unenforceable or void by law in any respect or for any reason, then the remaining provisions will continue in full force and effect, and such invalid, illegal, unenforceable or void by law provision(s) will be modified to the extent possible in such a manner as to best carry out the parties' intent.

 D. **Binding Effect and Assignability.** All my obligations under this Agreement will be binding upon my heirs, executors, administrators, legal representatives and assigns. This Agreement is not assignable or transferable by me, in whole or in part, except with the written consent of Applied.

 E. **Prior Agreements.** I acknowledge that this Agreement is the sole and entire agreement between Applied and me with respect to its subject matters, and supersedes any previous and/or contemporaneous agreements, whether oral or written. I further acknowledge that I have not relied upon any representation or promise not expressly stated in this Agreement, and that any modifications to this Agreement (other than to section 8) can be made only in a writing signed by me and an appropriate officer of Applied.

 F. **Duration.** The provisions of this Agreement will apply to the entire term of my Employment, or any other period in which I performed services for Applied, including all of those periods prior to the Effective Date of this Agreement. All provisions of this Agreement will survive termination, for any reason, of my Employment.

 G. **No Rule of Construction.** No rule of strict construction will apply against or in favor of either party in the construction and interpretation of this Agreement. Any rule of construction that ambiguities or other disputes about the document be resolved against the drafting party does not apply to the construction or interpretation of this Agreement.

I certify that I have carefully read all of the provisions of this Agreement, that I fully understand and will fully and faithfully comply with those provisions, and that I am entering into this Agreement voluntarily and of my own free will.

EMPLOYMENT AGREEMENT
June 1, 2018

| | |
|---|---|
| Kevin Jackson | APPLIED MATERIALS, INC. |
| Employee Name (print) | |
| *Kevin Jackson* | By: *Virginia Conboy* |
| Employee Signature | Human Resources Representative |
| 1815 Brookside Ave NW | |
| Home Address | |
| Salem, OR 97304 | |
| City, State, Zip | |