IN THE DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE
SANTA CLARA COUNTY, CALIFORNIA 05:20-CV-06007-VKD

Kevin F Jackson,
*Petitioner*
and
Applied Materials & Keith Dupen
*Respondent*

*Plaintiff Response to Jeffrey Wohl*: To Defendants Motion TO/FOR Compel Arbitration

Plaintiff Opposes Motion for the following reasons:

JAMS arbitration firm has racist arbitrators and they are the owners of the company as well. Conflict of Interest and Prejudicial bias at its finest hour. This is the very definition of duress and unconscionability as described in the Federal Arbitration Act of 1925. CEO Chris Poole's message: "Goals are no longer good enough" included with the Ninth Circuit Court of Appeals decision in the Monster Energy vs City Beverages case prove the point. JAMS is the only arbitration firm in the nation that provides its arbitrators stock/ownership in the firm. I am bewildered and amazed at Mr. Wohl's statements that all I've done is to refuse arbitration. I personally scheduled an Arbitration hearing with American Arbitration Association on 8-10-20. The AAA assigned the matter Case Number 01-20-0014-0981. Contact Applied Materials Outside Counsel Sherrard "Butch" Hayes of (Weisbart, Springer, & Hayes) LLP.  Applied Materials outside counsel Sherrard "Butch" Hayes of Weisbart Springer & Hayes requested that we move the arbitration hearing that I had scheduled with AAA to JAMS.

The definition of DURESS is: threats, violence, constraints, or other action brought to bear on someone to do something against their will or better judgement.

Unconscionability arises or occurs when an arbitration agreement is "one-sided" in favor of the employer without sufficient justification."  Little v Auto Stiegler Inc. 29 Cal 4th 1064 Cal Ct App 2003


**Federal Arbitration Act of 1925-**

Section 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract and transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*JAMS Rule #5*. <u>**Commencing an Arbitration**</u>

The arbitration is deemed commenced when JAMS issue a Commencement Letter based upon the existence of the following:

iv. The Respondent's failure to timely object to JAMS administration. <u>***KJ***</u> I sent notification on 8-22-2020 that I will <u>NOT</u> be participating in any arbitration hearing with this firm.

*JAMS Rule #13* <u>**Withdraw from Arbitration**</u>

i.      No Party may terminate or withdraw from the Arbitration after issuance of the Commencement Letter. <u>***KJ***</u> I withdrew from the JAMS arbitration and never received a Commencement Letter either by mail or email.

ii.     A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Party may within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct. <u>***KJ***</u> Served written notice on 8-22-2020 and never received any notice from a JAMS arbitrator. Never received anything from Applied Materials outside counsel neither.

*JAMS Rule #27* <u>**Waiver**</u>

i.      If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship. <u>***KJ***</u> I sent written objections and notices.

ii.     If any Party becomes aware of information that could be the basis of a challenge for cause to continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator. <u>***KJ***</u> I sent written notice to object the entire arbitration firm and their practices.

1.) Defendant's Counsel Jeffrey Wohl has selective reading concerns and never answered a single one of the following questions:

- *(36) Colleagues* = Does this number establishes a culture? The law in the United States, 18 U.S. Code § 521 "5**"** or more persons is determined to be a gang. In 36 states (21 USC § 802) "3**"** or more persons is determined to be a gang.
- Violation of a judicial oath is a Class "a" felony 18 U.S.C. 1918, were the three dozen JAMS arbitrators/employees charged with a class "a" felony?
- Whom else, did these presumed (36) colleagues forward that particular email on to?
- Did they send those emails on to other colleagues through their private email accounts as well or was the email deleted?
- Who were these unidentified colleagues that came forward to Mr. Neville's defense?
- What action did JAMS take against the recipients of Mr. Neville's email and to those whom came to his defense?
- What locations are each of these presumed individuals, who received the email, located and working at?
- Are they located and working at major hubs of JAMS?
- Are they located in major cities throughout the United States?
- What connection do each of these individuals have to each other?
- How did JAMS IT Department not flag this email?
- What is JAMS IT Department countermeasures and acknowledgment for this issue?
- How will the closed loop email structure be monitored in the future for possible violations?

Defendant's counsel Jeffrey Wohl's states, "Mr. Jackson is throwing a racism blanket over the entire arbitration firm." This is certainly not the case. I do not believe JAMS arbitration firm is currently suited to handle Title VII claims at this moment in time. I did not say anything about the foreseeable future of JAMS ability to fairly arbitrate Title VII claims. I personally believe the process of eliminating racism from an arbitration firm will take longer than 6 months, possibly years. Pictures of African Americans in JAMS pamphlets do not mean racism has been solved at that firm. I am also not saying that JAMS 400+ employees are all racist. I am only requesting the status of a very racist situation at JAMS that occurred as recently as Aug 2020.

Does any of these JAMS 400+ employees have mentors, managers, executive management, trainers, etc. Were any of these individuals listed on the Neville email? Companies are mostly driven by a Top Down management structure or a hierarchical system. The vile message sent by Arbitrator Neville was sent on a closed loop email system for high level executives at the JAMS arbitration firm. For all we know the CEO himself, Chris Poole could have been included in the email. He stated he read the message. The names of the individuals

involved in the sending/receiving of the racist Neville email should be made public if JAMS wants to continue Title VII arbitration hearings. It's the fair thing to do for those outside employees that are being forced by arbitration agreements to hold hearings with a verified racist opinionated firm. Employees need to be made aware of in advance to those listed on the email and those arbitrator/employee stock owners.

The National Employment Lawyer Association is calling for a review of past JAMS/Neville discrimination cases for bias. How long before the association makes it way to the other three dozen or so recipients of that email?

2.) Applied Materials Relationship with JAMS over the last 20 years

Defendant's counsel Jeff Wohl also never answered a single one of these following questions:

- The number of arbitrations held with JAMS arbitration regarding Title VII race discrimination lawsuits in the past 20 years,

- The number of African Americans currently and/or previously working at the Santa Clara facility for the last 20 years,

- Their job capacities, roles, and their attrition rates.

- Average dollar amount paid to employees after JAMS arbitration hearings

- Win/Loss percentage for Applied Materials/ JAMS arbitration hearing participants

- List of all Arbitrators that have participated in JAMS/Applied Materials hearings over the last 20 years

The reasoning for the request of the names is for association, historical trends, data analysis, and summarization of Applied Materials/JAMS interactions. Were any of the arbitrators who worked past Applied Material cases included in Mr. Neville's email? How long has JAMS been paying its arbitrators stock? Over the last 20 years or so? It's to the benefit of both Applied Materials and JAMS to rule in favor of the employer and could have been going on for the last 20 years or so.

I do not believe I am able to have a fair hearing with JAMS arbitration firm nor Applied Materials at this junction. JAMS is already in violation of the American Arbitration Association, Arbitration Rules and Mediation procedures, which discuss neutral judges and disqualifications of judges. I would also like for the Court to look at the historical data, trends/cycles of filings, settlement offers, and who were the arbitrators during this 20-year period.

<u>Party or their attorney</u>
Jeffrey Wohl, Lindsey Jackson
101 California Street, 48th Floor
San Francisco, Ca
Direct Line 415-856-700
Fax 415-856-7355

Signature of Party signing certificate and pleading
<u>Printed Name</u>: Kevin F Jackson <u>Date</u>: March 16, 2021
<u>Signature:</u>   *Kevin F Jackson*
1815 Brookside Ave NW
Salem, Oregon 97304
541-484-0167