UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN F. JACKSON,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLIED MATERIALS CORPORATION, et al.,<br><br>    Defendants. | Case No. 20-cv-06007-VKD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING ACTION**<br><br>Re: Dkt. No. 29 |

Plaintiff Kevin Jackson filed this Title VII action against his former employer, Applied Materials Corporation ("Applied Materials"), and its Managing Director of Human Resources, Keith Dupen. Dkt. No. 1. Defendants now move to compel arbitration pursuant to Mr. Jackson's employment agreement and stay the action. Dkt. No. 29.

All parties have consented to magistrate judge jurisdiction. Dkt. No. 4, 26. The Court heard oral argument on defendants' motion on April 6, 2021. Dkt. No. 44. Having considered the parties' briefs and arguments made at the hearing, the Court grants the motion to compel arbitration and stays the action pending arbitration.

**I.    BACKGROUND**

This case arises out of Mr. Jackson's former employment at Applied Materials. He applied for a Product Line Management IV position on May 10, 2018 and was offered the position on June 1, 2018. Dkt. No. 29-1, Ex. A at 1, Ex. B. Applied Materials' offer letter to Mr. Jackson stated that the offer of employment was contingent upon Mr. Jackson signing the letter and a separate Employment Agreement. *Id.*, Ex. B at 1–2.

The Employment Agreement includes a section on arbitration. It states:

> In consideration of my Employment, to the fullest extent allowed by law and except as set forth below, any controversy or claim (whether or not arising out of or relating to my Employment or termination of my Employment) . . . by me (and no other party) against Applied [Materials] . . . or any of [Applied Materials'] agents or employees . . . will be finally resolved by binding arbitration. The arbitration will be conducted by a single, neutral arbitrator and administered by JAMS, Inc. ("JAMS"), under its Employment Arbitration Rules & Procedures . . . and no other rules . . . .

*Id.*, Ex. C at 6. The Employment Agreement expressly specifies that claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and any other federal, state, or local statute, regulation, or common law doctrine, including contract or tort, are subject to arbitration. *Id.*, Ex. C at 7. It also states that the Employment Agreement is governed by the Federal Arbitration Act. *Id.* The Employment Agreement further states that Applied Materials and Mr. Jackson "are waiving [their] rights to proceed in a court of law, including a trial by jury, in exchange for arbitration." *Id.* Mr. Jackson signed the offer letter and the Employment Agreement on June 1, 2018. *Id.*, Ex. C. at 1, 9.

According to Mr. Jackson, his last day of employment was December 17, 2019. Dkt. No. 10 ¶ 17. He filed this action on August 24, 2020. Dkt. No. 1. The operative complaint asserts a claim for race discrimination and retaliation in violation of Title VII and alleges that Applied Materials did not permit Mr. Jackson to transfer to a different position within Applied Materials, gave him poor performance reviews, constructively discharged him, and otherwise retaliated against him in other ways because of his race. Dkt. No. 10. Defendants move to compel arbitration pursuant to the Employment Agreement. Dkt. No. 29.

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111–12 (2001). Congress enacted the FAA to ensure enforcement of written arbitration agreements according to their terms based on "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Specifically, Section 4 of the FAA authorizes a party to an arbitration agreement to petition a

2

1  United States district court for "an order directing that such arbitration proceed in the manner
2  provided for in such agreement." 9 U.S.C. § 4.

3  Courts have developed a "liberal federal policy favoring arbitration agreements." *Moses
4  H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25 (1983). Under this presumption
5  in favor of arbitration, a court should not decline to order arbitration "unless it may be said with
6  positive assurance that the arbitration clause is not susceptible of an interpretation that covers the
7  asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).
8  Under the FAA, a district court must compel arbitration if (1) a valid agreement to arbitrate exists,
9  and (2) the dispute falls within the scope of the agreement. *Geier v. M-Qube Inc.*, 824 F.3d 797,
10 799 (9th Cir. 2016) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th
11 Cir. 2000)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district
12 court, but instead mandates that district courts shall direct the parties to proceed to arbitration on
13 issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*,
14 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

15 Arbitration agreements are "a matter of contract" and "may be invalidated by generally
16 applicable contract defenses, such as fraud, duress or unconscionability." *Rent-A-Ctr., W., Inc.
17 v. Jackson*, 561 U.S. 63, 67–68 (2010). Parties may "agree to limit the issues subject to
18 arbitration" and "to arbitrate according to specific rules." *AT&T Mobility LLC v. Concepcion*, 563
19 U.S. 333, 345 (2011). "[T]he party resisting arbitration bears the burden of proving that the
20 claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531
21 U.S. 79, 81 (2000).

22 **III.  DISCUSSION**
23     **A.  Request for Judicial Notice**
24 Defendants ask the Court to take judicial notice of two items: (1) the "About" page on the
25 JAMS website, and (2) the JAMS Employment Arbitration Rules & Procedures ("JAMS Rules").
26 Dkt. No. 38. Mr. Jackson does not object to the request.
27 The Court need not rely on the "About" page of the JAMS website to resolve this motion
28 and therefore denies judicial notice as to that item. The Court takes judicial notice of the second

United States District Court
Northern District of California

1    item, the JAMS Rules, as those rules are referenced in the Employment Agreement's arbitration
2    clause.

### B.   Motion to Compel Arbitration

The Court must first consider whether the parties' agreement to arbitrate is valid. It then turns to whether this dispute falls within the scope of the agreement. *Geier*, 824 F.3d at 799.

#### 1.   Validity of the Employment Agreement

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state law." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks omitted). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that there was an agreement to arbitrate. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Conversely, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Therefore, a court may find that an agreement to arbitrate exists as a matter of law "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Id.* (quotation omitted); *see also Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 394 (9th Cir. 2017) (same).

Under California law, a valid contract requires the "mutual consent of the parties," which is "generally achieved through the process of offer and acceptance." *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (internal citations omitted). Whether mutual consent existed "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* Although mutual consent is generally a question of fact, whether a certain set of facts is sufficient to establish a contract is a question of law. *Id.*; *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 863 (2016).

Here, Applied Materials provides evidence that the parties entered into an Employment Agreement requiring the arbitration of Mr. Jackson's Title VII claim. Mr. Jackson does not dispute that he signed the offer letter and Employment Agreement; however, the Court infers from

4

his submissions[1] that he opposes arbitration on grounds of duress and unconscionability. *See* Dkt. No. 35 at ECF p. 2; Dkt. No. 40 at ECF p. 1.

"Under California Law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). To establish a defense of unconscionability, "the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). The Court's evaluation of procedural and substantive unconscionability proceeds on a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

### a.     Procedural unconscionability

The Court understands Mr. Jackson's argument concerning duress as one asserting procedural unconscionability. *See* Dkt. No. 40 at ECF p. 1. Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power" where oppression "arises from an inequality of bargaining power that results in real negation and an absence of meaningful choice." *Poublon*, 846 F.3d at 1260 (internal quotations omitted). "California courts have held that oppression may be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract

---

[1] Mr. Jackson submitted an opposition brief to defendants' motion on March 5, 2021. Dkt. No. 35. Defendants filed their reply brief on March 10, 2021. Dkt. No. 37. After briefing closed, Mr. Jackson filed another submission in response on March 16, 2021, which the Court construes as a surreply. Dkt. No. 40. Defendants objected to Mr. Jackson's unauthorized surreply. Dkt. No. 41. Defendants' objection is well-taken. Civil Local Rule 7-3(d)(1) states that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," with the exception of objections to new evidence raised in a reply brief. Civ. L.R. 7-3(d)(1). Mr. Jackson did not seek permission from the Court to file his surreply, nor does it address any purportedly new evidence in defendants' reply brief. Nevertheless, the Court must construe a pro se litigant's pleadings liberally and afford them the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The Court reminds Mr. Jackson that although he is a pro se litigant, he is still expected to abide by the Court's Civil Local Rules.

that it was oppressive." *Id.* (internal quotations omitted). The Ninth Circuit has held that "the threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th. Cir. 2006) (alterations and internal quotation marks omitted)). An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to accept the contract or reject it." *Id.* at 1261 (quoting *Armendariz*, 24 Cal. 4th at 113). There is no "rule that an adhesion contract is per se unconscionable." *Id.*

The Employment Agreement is an adhesion contract. Applied Materials presented the agreement on a take-it-or-leave-it basis by conditioning Mr. Jackson's employment on his acceptance of its terms. *See* Dkt. No. 29-1, Ex. B at 1–2. As the employer, Applied Materials had the superior bargaining position and apparently did not permit any exceptions to this pre-condition for employment.[2] Mr. Jackson perceived that his only option was to accept the agreement if he wished to become employed. In these circumstances, there is at least some degree of procedural unconscionability attending formation of the agreement. *See Garcia v. Din Tai Fung*, No. 20-cv-02919-BLF, 2020 WL 6822909, at *6 (N.D. Cal. Nov. 20, 2020).

However, several courts have found that "mandatory arbitration agreements offered as a precondition to employment are enforceable provided there is no indication that applicants signed the agreement under duress, were lied to, or otherwise manipulated into signing the agreement." *Id.* (listing cases, internal quotation marks omitted). "The adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261–62 (citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 12 45 (2016)). Mr. Jackson points to no other circumstances suggesting he signed the Employment Agreement and agreed to arbitration under duress, and the Court finds no other indication of oppression or surprise. "In the employment context, if an employee must sign a non-negotiable employment agreement as a

---

[2] At the hearing, Mr. Jackson acknowledged that he did not attempt to negotiate any provision of the agreement before signing it, but for purposes of this motion, the Court assumes that Applied Materials would not have entertained any changes to the arbitration clause.

1   condition of employment but there is no other indication of oppression or surprise, then the
2   agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.* at
3   1260 (internal quotations omitted). The Court concludes that the parties' arbitration agreement is
4   an adhesion contract with minimal procedural unconscionability. The Court next considers
5   whether that agreement has a high degree of substantive unconscionability.

### b. Substantive unconscionability

A neutral arbitrator is an essential requirement to ensure the integrity of the arbitration process. *Armendariz*, 24 Cal. 4th at 103. Mr. Jackson argues that he will be unable to have his dispute with Applied Materials resolved by a neutral arbitrator, as the agreement requires, if the arbitration is administered by JAMS. Mr. Jackson cites two principal reasons for why he believes JAMS cannot field a neutral arbitrator. First, he contends that JAMS has potential conflicts of interest. He argues that the selected JAMS arbitrator may have an ownership interest in JAMS which could cause that arbitrator to be biased in favor of Applied Materials, given his expectation that JAMS and Applied Materials have an on-going business relationship or that JAMS at least enjoys repeat business from Applied Materials.. Dkt. No. 35 at ECF pp. 2–3; Dkt. No. 40 at ECF pp. 4–6. Second, Mr. Jackson points to an incident in August 2020 when a JAMS arbitrator, retired Cook County, Illinois Judge Richard Neville, sent an email containing racist sentiments about Black people to at least 36 other people. Dkt. No. 35 at ECF pp. 1–2; Dkt. No. 1-2 at ECF pp. 37–43. Mr. Jackson expresses concern that a culture of racism exists within JAMS which will make it impossible for him, as a Black person, to have a fair hearing, particularly in a case involving race discrimination claims. Dkt. No. 35 at ECF pp. 1–2; Dkt. No. 40 at ECF pp. 3–6.

While Mr. Jackson's concerns are understandable, they do not render the terms of the arbitration agreement substantively unconscionable. The agreement provides for arbitration by a "neutral arbitrator" which is "administered by [JAMS] under its Employment Arbitration Rules & Procedures." Applied Materials moves to compel an arbitration that complies with this provision, and there is nothing substantively unconscionable about this provision on its face.

With respect to Mr. Jackson's first argument, the Court is not persuaded that requiring arbitration under the auspices of JAMS necessarily means that the arbitrator selected will have a

7

1  conflict of interest. As Mr. Jackson correctly notes, JAMS arbitrators must disclose their
2  ownership interests in JAMS. Dkt. No. 35 at 2 (citing *Monster Energy Company v. City*
3  *Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019)). There is no reason to believe, however, that all
4  JAMS arbitrators are owners who would have a conflict of interest. The Court observes that under
5  the JAMS Rules, arbitrators must disclose potential conflicts of interest to the parties, and the
6  parties have an opportunity to participate in the selection of the arbitrator who will ultimately hear
7  the dispute. *See* Dkt. No. 38, Ex. B at Rule 15(h). Indeed, the parties may agree in advance on a
8  mutually acceptable JAMS arbitrator of their own choosing. As for Mr. Jackson's concerns about
9  the frequency with which Applied Materials may have used JAMS's services, the Ninth Circuit
10  has held that the mere fact that a company like Applied Materials is a "repeat player," without
11  more particularized evidence of bias, is insufficient under California law to support a finding of
12  unconscionability. *Nagrampa*, 469 F.3d at 1284–85; *see also Bankwitz v. Ecolab, Inc.*, No. 17-cv-
13  02924-EMC, 2017 WL 4642284, at *4 (N.D. Cal. Oct. 17, 2017). The Court understands,
14  however, that proposed arbitrators routinely disclose to the parties whether they have handled
15  matters for one or the other or both in the past, and Mr. Jackson will have the benefit of this
16  information in selecting a neutral.

17  With respect to Mr. Jackson's second argument, the Court agrees that Mr. Jackson is
18  entitled to have a neutral arbitrator who does not harbor racial bias, and that the incident to which
19  Mr. Jackson refers in his papers reflects that at least Judge Neville is not an acceptable arbitrator
20  and apparently he no longer works for JAMS. However, the Court does not agree that the incident
21  shows that all JAMS arbitrators are presumptively prejudiced against Black people. The Court
22  understands that Mr. Jackson wishes to know which, if any, JAMS employees were copied on
23  Judge Neville's email, or at least wishes to know that any potential arbitrators proposed for his
24  arbitration were *not* copied on the email. At the hearing, Applied Materials indicated that it has no
25  objection to asking JAMS to provide information to the parties that will permit them to avoid any
26  arbitrators copied on Judge Neville's email.[3]

---

[3] The email and its recipients appear to be a matter of public record and available online through the District of Columbia's Superior Court. *See The Nat'l Rifle Assoc. v. JAMS, Inc.*, Case No.

Because the arbitration agreement is not substantively unconscionable on its face, and because the JAMS Rules provide a means by which the parties can select a neutral arbitrator, the Court finds that Mr. Jackson has not demonstrated substantive unconscionability.

### 2. Scope of the Employment Agreement

The parties do not dispute that the Employment Agreement's arbitration clause applies to Title VII claims such as Mr. Jackson's. Dkt. No. 29 at 2–3; *see* Dkt. Nos. 35, 40. The language of the Employment Agreement unambiguously reserves Title VII claims for arbitration, thus Mr. Jackson's claim falls within the scope of the Employment Agreement's arbitration clause.

In sum, the Court finds that the arbitration clause in the Employment Agreement is enforceable, and Mr. Jackson must arbitrate his Title VII claim.

### C. Motion to Stay

Applied Materials moves to stay the action in its entirety pending the completion of arbitration proceedings. Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Ninth Circuit has held that courts have discretion under § 3 to dismiss claims that are subject to an arbitration agreement. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

Mr. Jackson does not oppose the stay. *See* Dkt. No. 35. Accordingly, the Court stays this action pending the outcome of arbitration proceedings between the parties.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Applied Materials's motion to compel arbitration. This action is stayed in its entirety pending the final resolution of the arbitration. The parties shall file a joint status report within two weeks of the completion of arbitration.

The Clerk of the Court shall administratively close the case.

///

///

---

2020 CA 003346 B, Compl. (D.C. Super. Ct. July 29, 2020).

9

**IT IS SO ORDERED.**

Dated: April 8, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge