Pages 1 - 21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Virginia K. DeMarchi, Magistrate Judge

```
KEVIN F. JACKSON,              )
                              )
          Plaintiff,          )
                              )
   VS.                        )   NO. C 20-06007 VKD
                              )
APPLIED MATERIALS and KEITH   )
DUPEN,                        )
                              )
          Defendants.         )
_____)
```

San Jose, California
Tuesday, April 6, 2021

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
KEVIN JACKSON, PRO SE
1815 Brookside Avenue, NW
Salem, Oregon 97304

For Defendants:
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
BY: **JEFFREY D. WOHL, ATTORNEY AT LAW**

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
BY: **LINDSEY C. JACKSON, ATTORNEY AT LAW**

Reported Remotely By: Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official U.S. Reporter

**Tuesday - April 6, 2021**                                          **10:25 a.m.**

P R O C E E D I N G S

---o0o---

THE CLERK:  Calling the matter of Jackson versus

Applied Materials, Case Number 5:20-cv-6007.

THE COURT:  Thank you.

I'd like to get appearances, please, starting with the

plaintiff.

Mr. Jackson, would you please state your full name.

MR. JACKSON:  Yes, Your Honor.  My name's Kevin Farrell

Jackson.

THE COURT:  Okay.  Thank you.

And for the defendant?

MR. WOHL:  Good morning, Your Honor.  Jeffrey Wohl,

Paul Hastings, for the defendants.

THE COURT:  Okay.  Thank you.

Is there anyone else here?

MS. JACKSON:  Good morning, Your Honor.  Lindsey Jackson

from Paul Hastings for the defendants.

THE COURT:  Okay.  Great.  Good morning.

So we are here on Applied Materials' motion to compel

arbitration.

The question before the Court is whether the arbitration

agreement in Mr. Jackson's employment agreement with

Applied Materials is enforceable and requires his claims in

1 this case to be arbitrated instead of litigated before

2 this Court.

3      So I just wanted to frame the issue that way so there's no

4 confusion about what the purpose of today's hearing is.

5      And I would like to start with a few questions for

6 Mr. Jackson.

7      **MR. JACKSON:**  Yes, Your Honor.

8      **THE COURT:**  So, Mr. Jackson, I want to make sure that I

9 understand your position on the question that is before

10 the Court.

11      Am I correct that you do not object to arbitration of your

12 claims, but rather, you object to arbitration of your claims

13 before a JAMS arbitrator?

14      **MR. JACKSON:**  Your Honor, I honestly prefer to have my

15 claims heard in a court of law in front of a jury.  You know, I

16 did -- I scheduled a hearing with the American Arbitration

17 Association; and then defense counsel's team member moved that

18 meeting over to JAMS.  I honestly would prefer to take this

19 matter to trial by jury versus arbitration.

20      **THE COURT:**  Okay.  So I understand that that's your

21 preference.

22      **MR. JACKSON:**  Yes.

23      **THE COURT:**  And given that there's a motion to compel

24 arbitration pursuant to an agreement --

25      **MR. JACKSON:**  Yes.

1    **THE COURT:**  -- we have a little bit of a different context

2  than simply what the parties' preferences might be.

3    So in that context --

4    **MR. JACKSON:**  Okay.

5    **THE COURT:**  -- are you objecting to arbitrating your

6  claims before a JAMS arbitrator in particular, or do you feel

7  that there's something improper about arbitration under the --

8    **MR. JACKSON:**  Oh, there's definitely something improper

9  about arbitration.  And it's specifically with JAMS.

10    **THE COURT:**  Specifically with JAMS?  Is that what you

11  said?

12    **MR. JACKSON:**  Specifically with JAMS.

13    Applied Materials' relationship with JAMS' CEO.

14  Chris Poole's general announcement "Goals are no longer good

15  enough," Your Honor.  Just that document alone, and then in

16  addition with Neville's e-mail, that's my issue with JAMS.  The

17  three dozen or so recipients of that e-mail, we don't know

18  anything about them.

19    **THE COURT:**  Okay.  So if you could satisfy yourself that

20  the JAMS arbitrator that is selected for the parties' dispute

21  or who may eventually be proposed for the parties' dispute

22  didn't participate in Mr. Neville's e-mail exchange and doesn't

23  have an ownership interest in JAMS and has not previously

24  arbitrated a dispute with Applied Materials, would you have any

25  objection to arbitrating before JAMS?

1    **MR. JACKSON:**  Yes, I would, because then the matter would

2    go to the Older Workers Benefit Protection Act violation by

3    Keith Dupen.

4        **THE COURT:**  Okay.  So, Mr. Jackson, I think that relates

5    to your other agreement, your separation agreement.  Am I

6    correct?

7        **MR. JACKSON:**  Yes, that relates to the voluntary

8    separation agreement.

9        **THE COURT:**  Okay.  So that's really not the issue that

10   we're talking about.  We're talking about the arbitration

11   agreement in your employment agreement.  So I want to focus on

12   that agreement.

13       **MR. JACKSON:**  Okay.  And then, so let me add this.

14   Your Honor, I did everything that was required of that

15   arbitration agreement.  I applied to have the arbitration

16   hearing.  It was moved to JAMS.  Chris Poole sent out the

17   general announcement concerning Richard Neville's e-mail.  I

18   sent out a refusal after reading that general announcement.

19   And I followed every step.

20       Applied Materials and JAMS, after I sent out the

21   refusal -- and I sent that to their case manager; I sent that

22   to their --

23       **THE COURT:**  Okay.

24       **MR. JACKSON:**  -- legal department; I sent that to their

25   counsel -- there was no response, Your Honor.

1      **THE COURT:**  Okay.  So I understand that you had tried to

2  initiate something before AAA.  The agreement --

3      **MR. JACKSON:**  But I'm -- I'm speaking directly to JAMS as

4  well.

5      **THE COURT:**  Right.

6      **MR. JACKSON:**  I -- I --

7      **THE COURT:**  No.  I understand that you objected to JAMS.

8      And the agreement that you all have --

9      **MR. JACKSON:**  Yes.  And I followed JAMS' rules and

10  regulations.

11      **THE COURT:**  Right.  But the agreement that you all have

12  specifies JAMS --

13      **MR. JACKSON:**  Yes.

14      **THE COURT:**  -- as the arbitrating entity if it has an

15  office within 100 miles of where you were employed --

16      **MR. JACKSON:**  Yes.

17      **THE COURT:**  -- and AAA, meaning the American Arbitration

18  Association, otherwise.

19      **MR. JACKSON:**  Yes.

20      **THE COURT:**  So I take it that you were employed in

21  Santa Clara.  Is that correct?

22      **MR. JACKSON:**  Yes.

23      **THE COURT:**  Okay.  So that's why JAMS was selected.  It's

24  per your agreement.

25      **MR. JACKSON:**  Yeah, I understand that, Your Honor.

1      **THE COURT:**  Okay.

2      **MR. JACKSON:**  What I'm wanting the Court to understand is

3   JAMS' Rules and Regulations 4, 5, 13, 27, and 30.  So those

4   rules all apply, and I followed each and every one of those

5   rules.

6      **THE COURT:**  But, Mr. Jackson, I think the problem is, is

7   that you can't simply invoke the rules to not have an

8   arbitration when your contract says the claims are arbitrable

9   by JAMS.  You can't simply then say:  But I'm not going to.

10  I think that's the problem.

11     **MR. JACKSON:**  Well, the prob- -- and I think -- I think my

12  confusion lies with the fact that here's an arbitration firm

13  claiming to have racist overtures or racist overtones and then

14  I'm having to send a Title VII case there for mandatory

15  arbitration.

16     **THE COURT:**  And I certainly understand that concern.

17     However, I wanted to make sure you were aware of a couple

18  of things about JAMS.

19     **MR. JACKSON:**  Okay.

20     **THE COURT:**  First of all, it has many, many, many

21  neutrals.  You don't have to pick Mr. Neville.  Okay?

22     **MR. JACKSON:**  Well --

23     **THE COURT:**  And I know you're concerned --

24     **MR. JACKSON:**  -- Your Honor --

25     **THE COURT:**  -- about other people to whom he e-mailed

1  things.

2        **MR. JACKSON:**  Yes, because those --

3        **THE COURT:**  But --

4        **MR. JACKSON:**  -- those three dozen -- those three dozen --

5        **THE COURT:**  I understand.

6        **MR. JACKSON:**  -- individuals have not been identified,

7  Your Honor.

8        **THE COURT:**  I understand.

9        But one of the things that you get to do when you go to

10  JAMS is you get to disclose to JAMS any circumstances -- and

11  I'm reading from Rule 15(h) (reading):

12        ". . . disclose to JAMS any circumstance likely

13        to give rise to justifiable doubt as to the

14        Arbitrator's impartiality or independence, including

15        any bias or any financial or personal interest in the

16        result of the Arbitration or any past or present

17        relationship with the Parties or their

18        representatives."

19        So you would get to make your concerns about a particular

20  arbitrator and his or her neutrality, you would get to make

21  those concerns known to JAMS.

22        **MR. JACKSON:**  Your Honor --

23        **THE COURT:**  The rule specifically gives you the

24  opportunity to do that and to participate in the selection of

25  an arbitrator.

1    I just want to make sure that you understood that that was

2    part of the JAMS rules.

3    **MR. JACKSON:**  Yes, Your Honor.  And I've already submitted

4    my refusal.  Case manager Alice Lu from JAMS was included in

5    that e-mail, and that was sent in early August --

6    **THE COURT:**  Okay.

7    **MR. JACKSON:**  -- before the -- and it's my understanding

8    that Rule 5, before an arbitration can commence, if you have

9    problems or issues with that arbitration, then you send in

10   written notice.

11   And, Your Honor, I followed that rule.  I sent in --

12   **THE COURT:**  Mr. Jackson, there's a difference between

13   having a problem with arbitration and having a problem with a

14   particular arbitrator.

15   So what I'm trying to suggest to you is that you will have

16   an opportunity to make your concerns known in the process of

17   selecting a particular human to arbitrate your dispute.

18   So I don't accept the proposition that the entirety of all

19   of the arbitrators at JAMS are racist and unable to adjudicate

20   your claims in arbitration.

21   **MR. JACKSON:**  Your Honor, in Rule --

22   **THE COURT:**  Just a moment.  Just a moment.

23   That's not something that is persuasive to the Court.

24   I do appreciate your concerns.  I want you to understand

25   that.  But I do think you will have an opportunity to make the

1    particular concerns about your case known to JAMS, and I don't

2    see any reason why that should preclude JAMS arbitration at

3    all.

4        **MR. JACKSON:**  Your Honor, here's the reason.  JAMS Rule

5    Number 30.  So if we were to follow JAMS Rule Number 30, which

6    states that the CEO or no JAMS employee can be called to court

7    to testify and then, specifically, on the "Goals are no longer

8    good enough" matter.  And how does that relate to my case?

9    They cannot be called to court.

10       And furthermore --

11       **THE COURT:**  Mr. Jackson, JAMS is not a party --

12       **MR. JACKSON:**  -- they're to be considered incompetent, and

13   then they're to be considered not experts in a court of law.

14       **THE COURT:**  Mr. Jackson, JAMS is not a participant in the

15   underlying dispute you have with Applied Materials.  They are

16   simply the organization --

17       **MR. JACKSON:**  But the mandatory hearing --

18       **THE COURT:**  Just a minute.

19       **MR. JACKSON:**  -- is scheduled to go to JAMS.

20       **THE COURT:**  That's right, because that's your employment

21   agreement.

22       So let me ask you about your arbitration agreement.  The

23   arbitration agreement appears in your employment agreement

24   which was signed on June 1st of 2018.

25       Did you negotiate any of the terms of that agreement?

1       **MR. JACKSON:**  No, I did not.

2       **THE COURT:**  Did you ask to negotiate the terms of that

3  agreement?

4       **MR. JACKSON:**  No, I did not.

5       **THE COURT:**  Okay.

6       **MR. JACKSON:**  I needed -- I needed work.

7       **THE COURT:**  Okay.

8       **MR. JACKSON:**  I was unemployed for a year, year and a

9  half.  I needed work.

10      **THE COURT:**  Okay.  I understand.

11      Let me ask you one other question.  Applied Materials

12  asked that the Court stay this litigation, pending arbitration

13  of your claims; and that means that the litigation would be put

14  on hold, pending a resolution of the arbitration if the Court

15  grants the motion to compel arbitration.

16      Now, you didn't respond to that request in your

17  opposition.  And I just want to ask you now, do you object to a

18  stay of the litigation if the Court orders the matter to

19  arbitration?

20      **MR. JACKSON:**  Yes, I do, Your Honor.

21      **THE COURT:**  What would you have me do?  Dismiss the

22  litigation?

23      **MR. JACKSON:**  I would have you dismiss the voluntary

24  separation agreement, and then let's pursue this through trial

25  by jury.  That's because the -- there is a federal violation

1    there by the human resources manager.

2        **THE COURT:**  All right.  Mr. Jackson --

3        **MR. JACKSON:**  And that's a federal law enacted by

4    Congress.

5        So if we -- if -- with JAMS Rule Number 4, which says in a

6    conflict of law, you follow the applicable law, the applicable

7    law for the Older Workers Benefit Protective Association -- or,

8    excuse me -- Act says that a court of competent jurisdiction is

9    supposed to hear this matter.  It doesn't say anything about

10   the voluntary separation agreement matter being heard by an

11   arbitrator in that law.

12       **THE COURT:**  Mr. Jackson, your claims in this case are

13   within the scope of your arbitration agreement.  You've brought

14   the -- you've brought your Title VII claims, and they are

15   explicitly within the scope of your arbitration agreement.

16       If the Court grants the motion to compel arbitration, do

17   you object to staying the litigation?  Meaning --

18       **MR. JACKSON:**  Oh, no.  No, I do not object to staying the

19   litigation.

20       **THE COURT:**  Okay.

21       **MR. JACKSON:**  No, I do not.

22       **THE COURT:**  I thought you might have misunderstood my

23   question.  So, thank you.

24       All right.  Is there anything further that you would like

25   to address the Court on before I turn to counsel for

1    Applied Materials?

2         **MR. JACKSON:**  The voluntary separation agreement,

3    Your Honor.

4         **THE COURT:**  Okay.  Mr. Jackson, the question for today is

5    whether your claims involving all of your claims, whether those

6    claims are subject to arbitration.  I'm not deciding today the

7    merits of your underlying dispute or anything about the merits

8    of your underlying dispute.  What I'm trying to decide is

9    whether your arbitration agreement is enforceable and requires

10   that your claims be arbitrated.

11        Is there anything further you'd like to ask the Court

12   about or address to the Court on that subject?

13        **MR. JACKSON:**  Yes, there is, but I'll reserve to ask the

14   question later on.

15        **THE COURT:**  Okay.  All right.  I don't know which of you

16   is going to argue, Mr. Wohl or Ms. Jackson, but I do have one

17   question for you at the outset.

18        How does Applied Materials propose to address

19   Mr. Jackson's concerns to ensure that the arbitrator is indeed

20   neutral, as the agreement requires?

21        **MR. WOHL:**  Again, Your Honor, Jeffrey Wohl for the

22   defendants.

23        So JAMS has a selection process where they would propose

24   arbitrators, which would include various disclosures, and then

25   both parties would have an opportunity to say "yes" or "no" and

 1   see if we can agree.

 2       The other thing that I have done -- I just don't know if

 3   Mr. Jackson would entertain it because he appears very

 4   suspicious of the process -- is we could certainly propose some

 5   arbitrators to him to see if we could simply agree between

 6   ourselves on somebody.  Typically, in these cases, I look for a

 7   retired judge, because I find their credentials are impeccable

 8   and beyond any dispute.

 9       And so perhaps, if he were agreeable to a retired judge,

10   we can reach an agreement; but if not, we would just follow the

11   JAMS process, which has all the California-compliant

12   disclosures which would assuage any concerns that Mr. Jackson

13   should have about any sort of bias.

14       And, of course, he'd reserve all rights if there were any

15   bias that moves him to act.

16       **THE COURT:**  Would Applied Materials object to requesting

17   JAMS to disclose -- well, I think the disclosures JAMS is

18   required to make under law would being sufficient.

19       But it seems that Mr. Jackson's particular concern is

20   about the recipients of this e-mail from Mr. Neville.  I don't

21   know what JAMS' policies are on that or what they've done to

22   try to address other litigants' concerns about that event.  But

23   it seems that Mr. Jackson is particularly concerned about who

24   might have been on the receiving end of that e-mail string from

25   Mr. Neville.

1    And so I wondered what Applied Materials' views were about

2    asking JAMS to disclose that information.

3        **MR. WOHL:**  That would be perfectly fine with us,

4    Your Honor.  Whatever is transparent for Mr. Jackson is fine

5    with us.

6        **THE COURT:**  Okay.  Thank you.

7        And then Mr. Jackson has indicated that he, at least at

8    one point, was willing to arbitrate before the AAA.  I

9    understand that's not what's spelled out in your agreement.

10       So does Applied Materials have an objection to arbitrating

11   before the AAA?

12       **MR. WOHL:**  Our preference would be to adhere to the

13   contract, which does provide for JAMS.  And the reason for that

14   is that JAMS has a very well-developed set of rules regarding

15   employment disputes; and many of their neutrals are

16   particularly experienced in employment law disputes.  So

17   Applied simply felt this was a more efficient way of dealing

18   with it.

19       And so we'd like to adhere to that preference and stick

20   with JAMS, subject to all the disclosures that we talked about

21   so that Mr. Jackson should feel very comfortable, in fact, he's

22   getting a completely fair and neutral arbitrator.  That's the

23   only thing that we want too.

24       **THE COURT:**  All right.  Thank you for that.

25       Are there any other matters that you would like to raise

1   with the Court in response to Mr. Jackson's arguments or

2   otherwise?

3        **MR. WOHL:**  I don't think so, Your Honor.  I think our

4   papers covered everything that we had expressed.  If you have

5   any questions, we're glad to answer them.  But we're good on

6   this side.

7        **THE COURT:**  All right.  Thank you.

8        Okay.  Mr. Jackson, you wanted to have the last word here.

9   Is there anything that you would like to respond to?

10       **MR. JACKSON:**  Your Honor, yes.  So you're going to list

11  the three dozen or so individuals that was on Neville's e-mail.

12       I'd also like to have JAMS also list all their arbitrators

13  that are receiving stock options and/or that are owners in this

14  arbitration firm.  That would help cut down the process as

15  well.

16       **THE COURT:**  All right.  I appreciate your observation

17  there on that point.  I think the way you'll find that it will

18  work is that there will be a group of arbitrators who are

19  proposed, and they will have to disclose the information that

20  you described about ownership.  I believe that that's the way

21  it works.  So as opposed to giving you the entire list, it'll

22  be whoever is there will have to disclose whether or not they

23  are an owner in the business.  I'm not entirely sure how JAMS

24  handles that issue, but it is an important point.

25       And then I want to make sure that you understand,

1   Mr. Jackson, I can't direct JAMS to do any particular thing;

2   but what I did ask Mr. Wohl, on behalf of Applied Materials, is

3   whether Applied Materials would support the disclosure by JAMS

4   of that information about the people who received Mr. Neville's

5   e-mail so that you can have confidence that none of the

6   proposed neutral arbitrators that you are asked to select from

7   was involved in that particular event.

8       And Mr. Wohl, if I understood him correctly, said yes,

9   Applied Materials would support that.

10      So I'm not in a position to direct JAMS to do anything

11  about that, but if both parties request that information,

12  I think that you will find that JAMS will be receptive to it.

13      **MR. JACKSON:**  Okay.  And then there's also one other

14  request, Your Honor, the request for Applied Materials to hand

15  over 10 to 20 years of data with the relationship with JAMS

16  arbitration firm.  And what I'm looking for there is historical

17  data.  I'm looking for trends, tendencies.  And then I just

18  want to also make sure that JAMS is not Applied Materials'

19  get-out-of-jail-free card.  And I can do that by running a data

20  analysis on 10 to 20 years' worth of data.

21      And I did submit that information to the Court.  If

22  client, defense counsel is willing to do that, that would also

23  be grateful as well.

24      **THE COURT:**  All right.  Let me make sure I understand what

25  you're saying.

1          Your concern is that the neutral who is ultimately

2     selected or the group of neutrals who are presented for

3     selection not have a preexisting relationship with Applied

4     Materials and that that person hasn't resolved a number of

5     disputes with the plaintiff --

6          **MR. JACKSON:**  That is one concern, Your Honor.

7          **THE COURT:**  -- in the past.

8          **MR. JACKSON:**  But then I also want to look at the

9     relationship overall in general with JAMS as well.

10         With their arbitrators receiving stock options,

11    Your Honor, there's motivation there to generate repeat

12    business.  So I'd like to take a look at 10 years, 20 years'

13    worth of data and see what we can see there.

14         **THE COURT:**  Well, I'm not going to -- I am not going to

15    order that.  I can't order that.

16         But what I'm suggesting that you do is that, when you go

17    to JAMS, if I do order -- if I do grant the motion, is that you

18    ask for the information that you're concerned about; that

19    you ask --

20         **MR. JACKSON:**  Your Honor, according to Rule 26 --

21         **THE COURT:**  Excuse me, Mr. Jackson.  You cannot interrupt

22    me.

23         What I'm suggesting is that you use the information or the

24    rules that JAMS provides to ask for information in the

25    disclosure so that you know whether the neutral that you have

1    before you or the neutrals that you're permitted to select

2    from, you know whether any of those people have been involved

3    in a dispute with Applied Materials before.

4        You can ask for that --

5        **MR. JACKSON:**  I'm not asking for the information from

6    JAMS.  I'm asking for the information from Applied Materials,

7    their side of the information.

8        **THE COURT:**  Well, I --

9        **MR. JACKSON:**  It's just totally different.

10       **THE COURT:**  I'm not going to order any discovery in --

11       **MR. JACKSON:**  Okay.  I'll make note of it.

12       **THE COURT:**  -- advance of the arbitration.

13       **MR. JACKSON:**  I'll make note of it.  Because Rule 26 says

14   plaintiff is entitled to a limited scope of discovery in

15   specific, relevant issues.  So I'll make --

16       **THE COURT:**  Yes.

17       **MR. JACKSON:**  -- note of it.

18       **THE COURT:**  Mr. Jackson, that's the case when a matter is

19   before the Court.

20       **MR. JACKSON:**  Okay.

21       **THE COURT:**  The motion before the Court right now is

22   whether to compel arbitration of the dispute.

23       **MR. JACKSON:**  Okay.

24       **THE COURT:**  If the Court grants the motion, which I am

25   inclined to do -- I won't make any secret of that.  I'm

1    inclined --

2         **MR. JACKSON:**  Okay.  Well, then do it now.

3         **THE COURT:**  -- to grant -- I'm inclined to grant the

4    motion -- you will have the opportunity to obtain information

5    about the underlying dispute, relevant --

6         **MR. JACKSON:**  Okay.

7         **THE COURT:**  -- to the underlying dispute.

8         **MR. JACKSON:**  Okay.

9         **THE COURT:**  The whole point of arbitration and why parties

10   agree to it is because it's intended to be more expeditious and

11   more cost effective.

12        **MR. JACKSON:**  Not when it's lopsided and one-sided, it's

13   not.

14        **THE COURT:**  Mr. Jackson, you had the opportunity to make

15   that argument already.  I've read your papers.

16        **MR. JACKSON:**  Yeah.

17        **THE COURT:**  And I appreciate your point.

18        **MR. JACKSON:**  I'll file appeal a many.

19        **THE COURT:**  Okay.

20        **MR. JACKSON:**  So you're ruling, and then I'll file an

21   appeal.

22        **THE COURT:**  Okay.  Mr. Jackson, I will issue an order on

23   this matter, and it will probably be before the end of

24   the week, and the parties will have my decision.

25        **MR. JACKSON:**  Great.

1        **THE COURT:**  Is there anything further from Applied

2   Materials.

3        **MR. WOHL:**  No, Your Honor.  Thank you for your time this

4   morning.

5        **THE COURT:**  All right.  Thank you all very much.

6        This matter is concluded.

7             (Proceedings adjourned at 10:46 a.m.)

8                      ---o0o---

9

10               **CERTIFICATE OF REPORTER**

11        I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14   DATE:  Friday, June 4, 2021

15

16   _____

17        Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
              Official United States Reporter

18

19

20

21

22

23

24

25