UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
9TH Cir. Case No 21-15628; District Court Case No 05:20-cv-06007-vkd

<u>Kevin F Jackson</u>,
*Appellant*
and
<u>Applied Materials & Keith Dupen</u>
*Appellee*

**<u>JURISDICTION</u>**:

1. <u>Timeliness of Appeal</u>

    - Date of Judgement: *4-6-21*
    - One Motion was filed after Final Judgement was submitted. Filed a Motion of Appeal with the 9th Circuit Court of Appeals
    - Date filed for Notice of Appeal: 4-6-21

I believe the District Court erred in its decision granting Motion to Compel Arbitration with a Stay Action for the following reasons:

<u>Facts</u>:

JAMS arbitration firm gives me grave concerns in regards to racist arbitrators amongst its ranks and in some cases, arbitrators who are provided with stock options as part of their employment. Conflict of Interest and Prejudicial bias in its finest hour. This is the very definition of duress and unconscionability as described in the Federal Arbitration Act of 1925. JAMS CEO Chris Poole sent out a general announcement to the public at large on 8-11-2020 informing of a racist and vile email sent out by former Cook County Circuit Court Judge/ Former JAMS arbitrator Richard C. Neville to 39 recipients and colleagues. That email contained an article titled "***The Black Dilemma***" sourced from a hate group known as American Renaissance formerly known as the Southern Poverty Law Center, that portrays African Americans as an immutably inferior population, "taken from the jungles of Africa," who have "no intellectual achievements", are "socially incompatible with other races," and who commit violent crimes" for the thrill of it [which] has nothing to do with poverty." Decrying desegregation laws, the essay blames "elites" for a failed experiment in inclusion, then ominously concludes that, "They will be the only ones who are surprised when real revolution comes to the United States, and that it is white people who lead the revolt." Neville and several of the 39 recipients also sent additional emails and in Neville's case (a phone call as well) showing no remorse for the email neither.

The National Rifle Association vs JAMS Inc., and Winston & Strawn LLP Civil No. 003346 7/29/2020 Superior Court of the District of Columbia

As we are all aware, the United States Capitol in Washington D.C. was stormed on January 6, 2021. Who knows what atrocious actions lies ahead.

This very court, the 9th Circuit Court of Appeals, ruled in a decision in the Monster Energy vs. City Beverages case that JAMS must provide all participants with the names of all arbitrators that own stock in the firm. With that said, I will also add the fact that JAMS arbitration firm is the **only** arbitration firm in the nation that provides its arbitrators stock/ownership in the company. CEO Chris Poole's general announcement was submitted to the District Court for review.

At this junction, I would like to include the Oath of Office for a Justice & Judge for the record. Under 28 U.S.C. §453, it states the Oath of Justice & Judge as:

"I___ ____ do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____under the Constitution and laws of the United States. So help me God."

Those of us United States citizens, who are not attorneys nor legalizes, take these words very seriously. Those words mean that when we walk into a Court of Law or any forum for that matter applying Law, that we are ensured of fairness and neutrality. I have several questions for the Appellate Court Judges:

1.) Is the Oath of a Justice/Judge a lifelong commitment or does it end when he/she leaves office?

2.) Is violation of that Oath of Office a Class "A" Felony? It is my understanding that failure to hold true to the Justice/Judge Oath of Office is considered to be treasonous. Is this statement correct in nature?

Judge Neville was committing a treasonous Class "a" felony by violating his oath of office while communicating with the 39 recipients of his vile email.  JAMS Arbitration firm CEO Chris Poole only took action against Judge Neville.  Note: Most Federal Task Force teams when charging multiple people with felonies look for actions that tie the individuals together. In some cases, it's by text messages, by payments made, and phone calls amongst one another for example. In this instance, felonious actions are

being committed while using electronic mail communication. There are simply too many unknowns with this event at JAMS arbitration firm.

1.) Who are they? Names need to made public in my opinion.
2.) What are their roles & responsibilities? Executive level, Managerial level, etc.
3.) Where are they located? Major Hubs, Major Cities, etc…
4.) More importantly, how do they interact amongst each other?
5.) How did JAMS IT Department not flag this email?
6.) What is JAMS IT Department countermeasures and acknowledgment for this issue?
7.) How will the closed loop email structure be monitored in the future for possible violations?

JAMS CEO Chris Poole states that he read the email. <u>Question</u>: How many other emails have been sent across this closed loop email system? The electronic communication platform that was being utilized by Judge Neville was a closed loop email system that was not being monitored by JAMS IT department.

If it was not for the inadvertent mailing of his racist and vile email communication to a lawyer that Neville was actively working a current arbitration case with, the general public at large would not have been made aware of these egregious acts. The question that begs to be asked at this juncture is: "How many other emails have passed through this closed loop system undetected with extreme racist topics against African Americans?"

JAMS CEO Chris Poole listed some of the arbitration company's immediate actions that will include the following:

1.) A review of vetting Neutrals prior to joining JAMS
2.) Diversity Teams
3.) A review and strengthening of existing mandatory training and materials
4.) A review of our neutral contracts and processes to ensure enforcement of company values and ethics.

The National Employment Lawyers Association has called for an investigation into JAMS/Neville previous arbitration cases for bias. How long before the National Employment Lawyers Association make their way to the other (36) or so recipients of that email?

One of CEO Chris Poole's last few sentences on his General Announcement state: "Nonetheless, no organization, including JAMS, can say their journey to equality is over…

Really? In an organization that is legally supposed to be neutral? In an organization that is rendering legally binding resolutions on United States citizens and employees? How are those earlier mentioned immediate actions, end goals, and/or objectives to be measured? Or gauged successful? In otherwords, how is JAMS arbitration firm going to determine its racism problem has been resolved in the short and long term?

**Refutation of JAMS Arbitration Hearing**

I personally scheduled an Arbitration hearing with American Arbitration Association on 8-10-20. The AAA assigned the matter Case Number 01-20-0014-0981. Contact Applied Materials Outside Counsel Sherrard "Butch" Hayes of (Weisbart, Springer, & Hayes) LLP.  Applied Materials outside counsel Sherrard "Butch" Hayes of Weisbart Springer & Hayes requested that we move the arbitration hearing that I had scheduled with AAA to JAMS. Once I learned of CEO Chris Poole's General Announcement concerning Judge Neville's email, I immediately rendered refutation of arbitration accordingly. A copy of my refutation of arbitration was provided to the District Court.

**Federal Arbitration Act of 1925-**

Section 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract and transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, ***save upon such grounds as exist at law or in equity for the revocation of any contract.***

The definition of DURESS is: threats, violence, constraints, or other action brought to bear on someone to do something against their will or better judgement.

Unconscionability arises or occurs when an arbitration agreement is "one-sided" in favor of the employer without sufficient justification." Little v Auto Stiegler Inc. 29 Cal 4th 1064 Cal Ct App 2003 No 11-56673 (9th Cir Oct 28, 2013)

***JAMS Rule #4 Conflict with Law***

   i.    If any of these Rules or modifications of the Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict and no other Rule will be affected. **KJ**

> *This Rule should then be applied to the OWBPA violation and the arbitration agreement voided.*

### *JAMS Rule #5*. **Commencing an Arbitration**

The arbitration is deemed commenced when JAMS issue a Commencement Letter based upon the existence of the following:

iv. The Respondent's failure to timely object to JAMS administration. **KJ** *I sent notification on 8-22-2020 that I will NOT be participating in any arbitration hearing with this firm. That message was sent to Applied Material Legal Executive team members Thomas Larkin & Susan Schwartz, JAMS Case Manager Alice Lu, Weisbart, Springer, & Hayes attorneys Sherrard "Butch" Hayes and Jan Blair.*

### *JAMS Rule #13* **Withdraw from Arbitration**

- i. No Party may terminate or withdraw from the Arbitration after issuance of the Commencement Letter. **KJ** *I withdrew from the JAMS arbitration and never received a Commencement Letter either by mail or email.*
- ii. A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Party may within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct. **KJ** *Served written notice on 8-22-2020 and never received any notice from a JAMS arbitrator. Never heard back from any JAMS representatives, Applied Materials representatives, nor their attorneys until I filed the lawsuit with the District Court and a Motion to Compel Arbitration was filed.*

### *JAMS Rule #27* **Waiver**

- i. If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship. **KJ** *I sent written objections and notices.*
- ii. If any Party becomes aware of information that could be the basis of a challenge for cause to continued service of the Arbitrator, such challenge

must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator. **_KJ_** *I sent written notice to object the entire arbitration firm and their practices.*

### *JAMS Rule #30 Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability*

i. The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager, and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding. **KJ** *This section is clearly a violation of my* **5th amendment** *rights to due process of law as following the arbitration hearing there is a scheduled return to the District Court to resolve the OWBPA violation by Keith Dupen. The results from this arbitration hearing are permanently binding. There are far too many questions that will need to be answered by JAMS CEO (if necessary), the arbitrator (definitely), the case manager, and any employee that has direct impact on the case. A few of those questions are:*

> 1.) *How does CEO Chris Poole's general announcement and immediate actions affect the outcome of my arbitration hearing?*
> 2.) *What are the results of those immediate actions that were undertaken?*
> 3.) *Will the results be made public so that "mandatory" future participants can be assured of neutrality?*
> 4.) *What is the success criteria that your arbitration firm is completely free of racism?*
> 5.) *What data is being used to base the previous results on?*
> 6.) *How long have the counter measures/resolutions been in place from the immediate actions?*
> 7.) *How are the counter measures/resolutions to be implemented over time and what does that timeframe currently look like?*

ii. The Parties shall defend and/or pay the cost (including attorney' fees) of defending the Arbitrator, Case Manager, and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

> iii.   The Parties agree that neither the Arbitrator, nor Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor Jams, including its employees or agents, shall be liable to any Party for any act or omission in connection with Any Arbitration conducted under these Rules, including but not limited to, any disqualification of or recusal by the Arbitrator.

Defendant's counsel Jeffrey Wohl's states, "Mr. Jackson is throwing a racism blanket over the entire arbitration firm." This is certainly not the case. I do not believe JAMS arbitration firm is currently suited to handle Title VII claims at this moment in time. I did not say anything about the foreseeable future of JAMS ability to fairly arbitrate Title VII claims. I personally believe the process of eliminating racism from this arbitration firm will take longer than 2-3 years. Pictures of African Americans in JAMS' pamphlets do not mean racism has been solved at that firm. I am also not saying that JAMS 400+ employees are all racist. I am only acknowledging the status of a very racist and delicate situation at JAMS that occurred as recently as Aug 2020. Moreover, the event was at the exact time my arbitration hearing was in the process of being moved there from American Arbitration Association.

### Applied Materials Relationship with JAMS over the last 20 years

Judge DeMarchi denied/declined my request to provide me with JAMS/Applied Materials arbitration hearings historical data, trends, tendencies, and payouts for JAMS/Applied Materials arbitration hearing participants over the last 10-20 years. The amended **Rule 26** provides for limited scope of discovery in some cases. Fischer vs Forrest 14 civ 1304/1307 (S.D.N.Y. February 18, 2017)

What does those JAMS/Applied Materials arbitration outcomes look like? Whether favorably or unfavorably. The question begs to be answered. We have previously discussed and discovered the underlying chaos that is currently running amuck in JAMS Arbitration firm. Has that "toxic culture" been established for far longer and is just now being brought to the forefront? There is an old business principle that states; "A satisfied customer is a happy customer that will soon become a repeat/return customer." JAMS Arbitrators receiving stock options, it's in their best interest to ensure their clients are satisfied which in turn generate return business, maintains revenue, keeps stocks stable and climbing. Loyal clients/customers are the core of your long-term growth. These actions are all at the expense of the American employee and in the name of clearing the District Court's case load.

Defendant's counsel Jeff Wohl also never answered a single one of these following questions:

- The number of arbitrations held with JAMS arbitration regarding Title VII race discrimination lawsuits in the past 20 years,
- The number of African Americans currently and/or previously working at the Santa Clara facility for the last 20 years,
- Their job capacities, roles, and their attrition rates.
- Average dollar amount paid to employees after JAMS arbitration hearings
- Win/Loss percentage for Applied Materials/ JAMS arbitration hearing participants
- List of all Arbitrators that have participated in JAMS/Applied Materials hearings over the last 20 years

And there were many more questions submitted along that line. The reasoning for the request is for association, historical trends, data analysis, and summarization of Applied Materials/JAMS interactions.

Is JAMS in fact, Applied Materials' "Get Out of Jail Free" card? Were any of the arbitrators who worked past Applied Material cases included in Judge Neville's email? How long has JAMS been paying its arbitrators' stock? Over the last 5 years or so? Over the last decade or so? Over the last several decades or so? For the reasons mentioned in the earlier paragraph, it's in JAMS best interest to ensure favorable rulings. These favorable rulings and/or interactions could have been possibly going on for the last 20 years or so. I am requesting the data from the Defendants to produce these results for evaluation by the Court. To provide a recent example of the bias in question, Defense Counsel Jeffrey Wohl stated at our hearing on April 6, 2021 with Judge DeMarchi that, "He knows a Judge that can arbitrate the hearing." Really, and I'm supposed to accept this Judge?

**Keith Dupen, Managing Director Human Resources, OWBPA, Voluntary Separation Agreement**

I provided the District Court with two pieces of valid United States identification for proof of age. I am 57 years of age. 17 years over the age of 40. The Older Workers Benefit Protection Act states: "Notwithstanding the explicit requirement in OWBPA that the Party claiming the validity of the waiver or release of the ADEA must prove that fact "in a court of competent jurisdiction." 29 U.S.C. §626 f(3). I did **NOT**

knowingly and voluntarily sign anything and I challenge Applied Materials and the attorneys to prove otherwise.

**OWBPA** (Older Workers Benefit Protection Act) General Rules for Employees Over 40

The act specifies very specific requirements for this waiver because the older employee must be aware of what they are signing and willingly sign it. The requirements are as follows:

- *The release must specifically include the Age Discrimination in Employment Act (ADEA)* **KJ** *The VSA I was forced to sign did not.*
- The release of age discrimination claims has to be written down. **KJ** *Defense Counsel Jeffrey Wohl stated that the Voluntary Separation agreement that I was forced to sign did not have a ADEA clause in it in his reply to the District Court.*
- The release cannot be enforced if the 21-day consideration period and the 7-day reconsideration period is not included in the release. **KJ** I was not provided (21) days to review the document. I was given 4.5 days in which a 24-hour notice was also included.
- The release of age discrimination claims must be written so that the employee can easily understand what they are agreeing to.
- It cannot contain any complex language or jargon.
- It must be a straight-forward release that does not mislead or confuse the employee.
- All benefits listed that are being provided to the employee in exchange for signing the waiver must be truthful.
- OWBPA requires the release to include a specified time period to decide whether or not to sign the release.

Keith Dupen, Managing Director of Human Resources was notified on December 11, 2019, in person, in his office, by me, that I was going to the local branch of the EEOC to file a discrimination complaint. And as Head of Human Resources, he chose to violate the OWBPA section of the Age Discrimination Employment Act of 1990. He also chose to deliberately and blatantly interfere in a EEOC investigation. There was an extraordinary and extreme amount of coercion and duress applied in regards to signing the voluntary separation agreement and throughout the process.

I'm requesting Defense counsel's client provide to the Appellate Court (**4**) emails, [ (**2**) from myself, and (**1**) each from Keith Dupen & Sheweta Hedwadkar]. Keith Dupen denied my request for additional days at the 3-4 day mark after the final paperwork was handed to me by email communication. I sent an email stating I was working with the EEOC and required more time. Keith Dupen, Managing Director of Human Resources replied "denied". I then sent an email communique

to Keith Dupen's manager and my level 2 manager's boss asking them for additional time.

I explained that I was tired of fighting baseless statements in order to leave the department and required more time. I was given (24) hours to sign the documentation. That message was delivered by to me by Sheweta Hedwadkar, Human Resources Business Partner, in an email correspondence. She reports directly to Keith Dupen. I'm also requesting both copies of the Voluntary Separation Agreement. The 1st set documentation, I added a 3rd line to the voluntary separation agreement signing area that I personally signed with a black Sharpie pen, that stated, "Neither, Working with the EEOC", and then proceeded to sign and date that line. The emails and documents will prove beyond a reasonable doubt, the violation of the OWBPA rules and blatant interference into an EEOC investigation.

**Unconscionable**: Reversing an order compelling arbitration, the 9th Circuit Court of Appeals held that, where a Party specifically challenges an arbitration as unconscionable, the Court, not the arbitrator, must decide the issue of unconscionability in the first instance, even if arbitration provides otherwise.
Jackson vs Rent-A-Center West Inc. No 07-161664 (9th Circuit September 9, 2009)

I do not believe I am able to have a fair arbitration hearing with JAMS arbitration firm nor Applied Materials at this junction. I am including both the Applied Materials Arbitration Agreement and JAMS Employment Arbitration Minimum Standards.

**Applied Materials Arbitration Agreement**

Section 8E of the arbitration agreement states: "Nothing in this agreement to arbitrate will prevent any party from seeking a court temporary equitable relief in aid of arbitration, including temporary restraining orders, temporary protective orders, evidence preservation, and return orders, and preliminary injunctions, where such relief is otherwise available by law."

**JAMS Employment Arbitration Minimum Standards**

Section C. Questions about Enforcement and Arbitrability

States: "If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting

party to seek a Judicial ruling on the issue. JAMS will comply with that determination. If there is no judicial determination within a reasonable period of time, JAMS will resolve questions of Arbitrability under the applicable JAMS Arbitration Rules and Procedures for Employment Disputes. I sent notice 7-1921 that I planned on contesting this arbitration for ADEA non-compliance and failing to meet the Employment Arbitration Minimum Standards."

It's unconscionable to believe that I would have to select an arbitrator who was not on or knowledgeable of Judge Neville's email, nor are they to be receiving stock options, all the while, this individual cannot be called to a Court of Law for any current or subsequent arbitration hearing that they will apply a legally binding resolution to. Prejudicial bias and Conflict of Interest in its finest hour indeed. JAMS is already in violation of the American Arbitration Association, Arbitration Rules and Mediation procedures, which discuss neutral judges and disqualifications of judges.

I am requesting the Voluntary Separation Agreement be voided under Section 2 of the Federal Arbitration Act of 1925 "save upon" clause. I would also like for the Court to request Defendants to provide all the historical data, trends/cycles of JAMS/Applied Materials arbitration hearings, settlement offers, and who were the arbitrators during this 20-year period. I would also like for the Appellate Court to send this case back to the District Court for trial by jury.

Previously the 9th Circuit was unable to hear the case due to Jurisdictional reasons. That should not be an issue nor concern now as both Applied Materials Arbitration Agreement and JAMS Employment Minimum Standards as stated above provide the right for a judicial review of the matter. All documents are included in the filing.

<u>Party or their attorney</u>
Jeffrey Wohl, Lindsey Jackson
101 California Street, 48th Floor
San Francisco, Ca
Direct Line 415-856-700
Fax 415-856-7355


Signature of Party signing certificate and pleading
<u>Printed Name</u>: Kevin F Jackson <u>Date</u>: 7-21-21
<u>Signature:</u>  *Kevin F Jackson*
1815 Brookside Ave NW
Salem, Oregon 97304
541-484-0167